# IN THE SUPREME COURT, STATE OF WYOMING

# 2016 WY 106

## OCTOBER TERM, A.D. 2016

<u>November 7, 2016</u>

BRET VANCE,

Appellant
(Petitioner),

v.

S-16-0057

CITY OF LARAMIE,

Appellee
(Respondent).

*Appeal from the District Court of Albany County*
The Honorable Jeffrey A. Donnell, Judge

*Representing Appellant/Petitioner:*

Charles F. Pelkey of Neubauer, Pelkey, and Goldfinger, LLP; A. Joe Hageman, Laramie, Wyoming. Argument by Mr. Hageman.

*Representing Appellee/Respondent:*

Amanda F. Esch and Shaina A. Case of Davis & Cannon, LLP, Cheyenne, Wyoming. Argument by Ms. Esch.

*Before BURKE, C.J., and HILL, DAVIS, KAUTZ, JJ., and CAMPBELL, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ,** Justice.

[¶1]   Appellee/Respondent City of Laramie (City) discharged Appellant/Petitioner Bret Vance from his position as a firefighter after random breathalyzer tests performed while he was on duty detected alcohol in his system.  He appealed the discharge, and after an evidentiary hearing, the Civil Service Commission (Commission) reduced his discipline from discharge to a suspension (Commission Decision #1).  Both the City and Mr. Vance petitioned the district court for review of the Commission's decision.  The district court reversed, concluding the Commission had applied the wrong legal standard and remanded the matter for further agency proceedings.

[¶2]   Upon remand, the Commission considered the same evidentiary record and ruled in favor of Mr. Vance, finding that the breathalyzer tests were invalid (Commission Decision #2).   The City petitioned the district court for review, and it again reversed and remanded.  The court concluded the record and the law did not support the Commission's determination that the tests were invalid.

[¶3]   Considering the matter for the third time, the Commission consented to Mr. Vance's discharge (Commission Decision #3).  Mr. Vance petitioned the district court for review, but it dismissed his petition.  Mr. Vance appealed to this Court, and we requested additional briefing on whether the district court had jurisdiction to consider the City's earlier petitions for review of the Commission decisions.

[¶4]   We conclude the legislature did not grant cities the right to judicial review of commission decisions refusing to consent to employee discharges.  Consequently, the district court did not have subject matter jurisdiction to consider the City's petition for review of Commission Decision #2.  Because the district court lacked jurisdiction to review the Commission's decision, it was final.  We dismiss this appeal.

## ISSUE

[¶5]   The dispositive issue in this case is:  Whether the district court had subject matter jurisdiction to consider the City's petition for review of Commission Decision #2, in which it refused to consent to Mr. Vance's discharge.

## FACTS

[¶6]   On December 5, 2012, Mr. Vance reported for work as a shift commander for the City's fire department and was notified that he had been randomly selected for alcohol detection testing.  Two breathalyzer tests performed minutes apart detected a low level of alcohol in his blood stream.  Mr. Vance had previously been disciplined for testing positive for cocaine in 2010.   Under the City's policies, a second drug or alcohol violation could result in discipline up to and including termination of employment.  The

1

City issued a disciplinary order discharging Mr. Vance from the fire department, and he requested a hearing before the Commission.

[¶7]    The Commission held an evidentiary hearing, applied the civil service rules and the City's personnel rules, and determined in Commission Decision #1 that the reason for the City's discipline decision was "partially justified."  It reduced the disciplinary action from discharge to a two-month unpaid suspension.  The City petitioned the district court for review, and Mr. Vance cross-petitioned.  The district court reversed Commission Decision #1, concluding the legal standard applied by the Commission did not comply with Wyo. Stat. Ann. § 15-5-112(b) (LexisNexis 2015), which required the Commission to determine whether the reason for discharge was "sufficient and established" and did not authorize it to determine that the reason was "partially justified."  The district court remanded the matter to the Commission for application of the correct standard.

[¶8]    The Commission considered the same evidentiary record and, in Commission Decision #2, refused to consent to Mr. Vance's discharge.  It ruled that the City's reason for discharging him was not sufficient and established because the breathalyzer tests did not comply with Department of Transportation (DOT) standards.  The City petitioned the district court for review, and the court again reversed and remanded.  The district court concluded the Commission's determination that the breathalyzer test results were invalid was not supported by the law or the evidence.  The district court ordered the Commission to accept and consider the breathalyzer test results on remand.  After deliberating the matter for a third time and in accordance with the district court's directive that it accept and consider the breathalyzer test results, the Commission ruled in Commission Decision #3 that the City properly discharged Mr. Vance because he violated the policy that prohibits employees from being on duty with "any detectable" blood alcohol concentration.

[¶9]    Mr. Vance filed a petition for review, and the district court dismissed his petition because, instead of raising issues about the Commission's most recent decision, Mr. Vance challenged the district court's previous order requiring the Commission to accept and consider the breathalyzer results.  Mr. Vance appealed to this Court.  We requested additional briefing on whether the district court had jurisdiction to consider the City's petitions for review of Commission Decisions #1 and #2.

**STANDARD OF REVIEW**

[¶10] We raised, on our own motion, the issue of whether the district court had jurisdiction to consider the City's petitions for review.  "A challenge to subject matter jurisdiction may be asserted at any time by any interested party or *sua sponte* by the court at the trial or appellate level."  *Ahearn v. Anderson–Bishop P'ship,* 946 P.2d 417, 422 (Wyo. 1997).  *See also SAS v. Dep't of Family Servs. (In re AGS),* 2014 WY 143, ¶ 15, 337 P.3d 470, 476 (Wyo. 2014).  If the district court did not have subject matter

2

jurisdiction over the City's petitions for review, we also lack jurisdiction. *Edsall v. Moore,* 2016 WY 71, ¶ 10, 375 P.2d 799, 801 (Wyo. 2016), citing *Platte Dev. Co. v. State, Envtl. Quality Council,* 966 P.2d 972, 974 (Wyo. 1998). The existence of subject matter jurisdiction is a question of law, subject to *de novo* review. *Poignee v. State,* 2016 WY 42, ¶ 8, 369 P.3d 516, 518 (Wyo. 2016); *Harmon v. Star Valley Med. Ctr.,* 2014 WY 90, ¶ 14, 331 P.3d 1174, 1178 (Wyo. 2014) (citations omitted).

## DISCUSSION

### A. Statutory Right to Judicial Review of Commission Decisions

[¶11] "'The right to judicial review of administrative decisions is entirely statutory.'" *Casper Iron & Metal, Inc. v. Unemployment Ins. Comm'n of Dep't of Employment,* 845 P.2d 387, 391 (Wyo. 1993), quoting *Sellers v. Employment Sec. Comm'n,* 760 P.2d 394, 395 (Wyo. 1988). *See also Lyles v. State ex rel. Div. of Workers' Comp.,* 957 P.2d 843, 846 (Wyo. 1998). Stated another way, judicial review of an administrative decision is not available unless made so by statute. *Industrial Siting Council v. Chicago and North Western Transp. Co.,* 660 P.2d 776, 778 (Wyo. 1983). To determine whether the district court had jurisdiction over the City's petition for review, we must interpret the relevant statutes. Statutory interpretation is a question of law subject to *de novo* review. *Albertson's, Inc. v. City of Sheridan,* 2001 WY 98, ¶ 7, 33 P.3d 161, 164 (Wyo. 2001); *Anderson Highway Signs and Supply, Inc. v. Close,* 6 P.3d 123, 124 (Wyo. 2000).

[¶12] Our focus, when interpreting statutes, is on determining the legislature's intent. Generally, we look to the "'ordinary and obvious meaning" of the statutory language. *Albertson's,* ¶ 7, 33 P.3d at 164, quoting *Kirbens v. Wyoming State Board of Medicine,* 992 P.2d 1056, 1060 (Wyo. 1999). In ascertaining the meaning of a given law, we consider and construe in harmony all statutes relating to the same subject or having the same general purpose. *Thunderbasin Land, Livestock & Inv. Co. v. Laramie County,* 5 P.3d 774, 779 (Wyo. 2000).

[¶13] The Wyoming Administrative Procedure Act (WAPA), §§ 16-3-101 through 115 (LexisNexis 2015) governs proceedings involving administrative agencies. Section 16-3-114(a), which generally follows the Model State Administrative Procedures Act, provides for judicial review of agency action:

> (a) Subject to the requirement that administrative remedies be exhausted and **in the absence of any statutory or common-law provision precluding or limiting judicial review, any person aggrieved or adversely affected in fact by a final decision of an agency** in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, **is entitled to judicial review**

3

**in the district court** . . . .

Section 16-3-114(a) (emphasis added); Model State Administrative Proc. Act 2010 § 501(b). Under § 16-3-114(a), judicial review of an administrative decision is available unless it is precluded or limited by statute or common law. By specifically referencing statutory **limitation** of review, the WAPA provides broader authority to withhold judicial review by statute than its federal counterpart, the Administrative Procedure Act (APA), which allows for judicial review "except to the extent that . . . statutes preclude judicial review." 5 U.S.C. §§ 701(a)(1) and 702.

[¶14] As the language of § 16-3-114(a) indicates, agency decisions are generally reviewable. *See generally* Availability of Judicial Review of Administrative Action, 55 Geo. Wash. L. Rev. 729, 729-30 (1987). Consistent with § 16-3-114(a), we have incorporated into our case law a presumption of reviewability. In interpreting statutes we have said that, to withhold judicial review of an agency decision, we must find clear and convincing evidence the legislature intended to preclude or limit such review. *Albertson's,* ¶ 8, 33 P.3d at 164. *See also Holding's Little America v. Bd. of County Comm'rs of Laramie County,* 670 P.2d 699, 702 (Wyo. 1983), *after remand,* 712 P.2d 331 (Wyo. 1985). However, we must keep in mind that the right to judicial review of agency action is created by statute, not by the presumption. The presumption merely provides a means of interpreting substantive statutes to determine whether the legislature intended to confer a right to judicial review. *See Albertson's,* ¶¶ 7-8, 25, 33 P.3d at 164-65.

[¶15] Section 15-5-112(b) governs a fireman's right to review of the city's decision to terminate his employment:

> (b) Discharge from a department, or reduction in grade or compensation, or both, may be made for any cause, not political or religious, which will promote the efficiency of the service, on written notice and specifications filed with the commission and served upon the person affected by the authority requesting the discharge or reduction. The person whose discharge or reduction is sought is allowed a reasonable time to answer the charges in writing and demand a hearing. The commission, after hearing or investigation, shall determine whether the reason for discharge or reduction is sufficient and established. Except as otherwise provided in subsection (c) of this section [pertaining to police departments] no person may be discharged or reduced in pay or rank without consent of the commission after a hearing, unless the action is pursuant to a classification program under W.S. 15-5-106. A copy of the specifications, notice, answer,

4

consent and order of discharge or reduction are a part of the public records of the commission.

Judicial review of the commission's decision is authorized by Wyo. Stat. Ann. § 15-5-113 (LexisNexis 2015):

> The decision of the commission discharging or reducing any person in rank or pay may be reviewed by the district court pursuant to Rule 12 of the Wyoming Rules of Appellate Procedure.

[¶16] Mr. Vance claims the City was not entitled to judicial review of Commission Decision #2.[1] In that order, the Commission refused to consent to the City's discharge of Mr. Vance because it found the City's reasons for the discharge based upon the failed breathalyzer tests were not sufficient and established under § 15-5-112(b). Mr. Vance argues that Commission Decision #2 was not subject to review under § 15-5-113 because the statute provides for review only of commission decisions "discharging or reducing any person in rank or pay," not for decisions refusing to discharge an employee. Stated another way, Mr. Vance argues that, because the Commission did not discharge him or reduce his rank or pay, the district court did not have subject matter jurisdiction over the City's petition for judicial review of the decision.

[¶17] The City asserts that Mr. Vance's reading of the statute is overly narrow. It maintains that, under *Keslar v. Police Civil Serv. Comm'n, City of Rock Springs,* 665 P.2d 937 (Wyo. 1983), the presumption of judicial review of administrative decisions governs and, because § 15-5-113 does not expressly prohibit the City from petitioning for review of a commission decision refusing to consent to a discharge, it is reviewable. A casual reading of *Keslar* supports the City's position; however, more careful review of the case and the legal developments since that time show the City's reliance is misplaced.[2]

---

[1] Mr. Vance's supplemental brief challenged the district court's jurisdiction to review both of the City's petitions for review. Both the City and Mr. Vance filed petitions for review of Commission Decision #1, raising questions about the legal standard applied by the Commission. At oral argument, Mr. Vance's attorney acknowledged that Mr. Vance's petition for review gave the district court jurisdiction to review Commission Decision #1. Therefore, we do not need to address the effectiveness of the City's petition for review of Commission Decision #1.

[2] In *Regan v. City of Casper,* 494 P.2d 933, 934-35 (Wyo. 1972), we stated that either the city or the employee would have the right to judicial review after the commission made a decision on remand. However, that decision was concerned with remand procedures and WAPA requirements, not the city's statutory right to judicial review of a commission decision refusing to consent to a discharge. Because *Regan* did not analyze the statutory language included in § 15-5-113, it does not govern our decision in this case.

5

## B. The *Keslar* Decision

[¶18]  In *Keslar*, we addressed whether, under § 15-5-113, the district court had jurisdiction to consider a police department employee's petition for review of a commission decision to suspend him.  We concluded that, although the statute specifically provides for review only of commission decisions discharging or reducing an employee's rank or pay, the decision suspending Keslar without pay was reviewable.  *Id.* at 941-44.

[¶19]  *Keslar* discussed federal precedent which generally held that statutes allowing for judicial review of administrative decisions are broadly interpreted, while exceptions to review are narrowly interpreted.

> "Each statute must be carefully examined to discover the legislature's intent to restrict judicial review of administrative action. (*Heikkila v. Barber* (1953), 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972.) While it is often said that barring constitutional impediments the legislature can preclude judicial review (*See Mount St. Mary's Hosp. v. Catherwood* (1970), 26 N.Y.2d 493, 511, 518–519, 311 N.Y.S.2d 863, 260 N.E.2d 508 (Fuld, C.J., Concurring)), such intent must be made specifically manifest, and persuasive reason must exist to believe such was the legislative purpose. (*Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681.) Only upon a showing of clear and convincing evidence of contrary legislative intent should the courts restrict access to judicial review. *Rusk v. Cort* (1962), 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809." *United States Steel Corp. v. Wyoming Environmental Quality Council,* [575 P.2d 749,] 750 [(Wyo. 1983), quoting *Klein v. Fair Employment Practices Commission,* 334 N.E.2d 370, 374 (1975).] [3]

*Keslar,* 665 P.2d at 941 (footnote added).  The *Keslar* decision continued by quoting *Abbott Laboratories* as follows:

> " * * * 'The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on

---

[3] The United States Supreme Court abrogated *Abbott Laboratories* and *Rusk,* in part, in *Califano v. Sanders,* 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).  *Califano,* 430 U.S. at 105-06, 97 S. Ct. at 984-85, held that the APA does not create an independent basis for a district court to assume subject matter jurisdiction over an administrative appeal.

such slender and indeterminate evidence of legislative intent.'
Jaffe, supra [Judicial Control of Administrative Action 336–359 (1965) ], at 357."

*Id.* at 942, quoting *Abbott Laboratories,* 87 S. Ct. at 1511-12.

[¶20]  The presumption of reviewability was not, however, the sole basis for our decision in *Keslar*.  We stated that, because the commission granted the employee an administrative hearing in accordance with its rules and regulations and the WAPA, "it became the law of this case that the four-day disciplinary suspension in effect was a reduction in compensation."  *Id.* at 943.  Thus, we concluded the suspension decision fell directly under the statutory language which provides for judicial review of commission decisions reducing an employee's pay.  In that respect, *Keslar* is very different from the case at bar because the City's appeal of the Commission's decision **not to discharge** Mr. Vance clearly does not fall under the express language of § 15-5-113.

[¶21]  *Keslar* also stressed that the commission's policies provided employees certain administrative protections:

> The Rock Springs Police Department Civil Service Commission, in the exercise of its discretion, had adopted the procedure provided in the Wyoming Administrative Procedure Act. Having made the choice to afford the appellant an administrative right of review, the Commission also agreed to extend to the appellant the full panoply of protection provided in the Wyoming Administrative Procedure Act, including the right to judicial review.

*Keslar,* 665 P.2d at 943 (citations omitted).  *See also Mondt v. Cheyenne Police Dep't,* 924 P.2d 70, 76-80 (Wyo. 1996) (describing the civil service statutes' protection of employee rights).  The City asserts that, under the same rationale, it is entitled to judicial review because it has adopted the WAPA procedures.  However, the reasoning advanced in *Keslar* does not apply when we are considering the City's right to judicial review.  The protections provided to employees in the commission's policies and procedures do not support extending the right to judicial review to the City.  Furthermore, the City does not have the power to adopt rules that contravene Wyoming statutes.  *Mondt,* 924 P.2d at 73 (stating that the commission's rules "cannot legally contravene the substantive content of the civil service statutes pursuant to which they are promulgated").  If the legislature chose to withhold from the City the right to judicial review of a commission decision refusing to consent to a discharge, the City cannot contravene that intent through adoption of WAPA procedures.

## C.  Legal Developments After *Keslar*

[¶22]   After *Keslar* was decided, the presumption of reviewability and the definition of clear and convincing evidence of legislative intent to withhold judicial review were refined by the United States Supreme Court and this Court.   The Supreme Court explained in *Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S. Ct. 2450, 81 L. Ed. 2d 270 (1984):

> **The presumption favoring judicial review of administrative action is just that—a presumption. This presumption, like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent**. . . .   [T]he presumption favoring judicial review of administrative action may be overcome by inferences of intent drawn from the statutory scheme as a whole. In particular, at least **when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded.**

*Block,* 467 U.S. at 349, 104 S. Ct. at 2455-56 (emphasis added and citations omitted).   In other words, the right to judicial review of an agency decision is created by statute, not by the presumption, and the presumption can only recognize a right of reviewability when the statute allows that interpretation.   The Supreme Court also clarified that it had, "never applied the 'clear and convincing evidence' standard in the strict evidentiary sense . . . . Rather, the Court has found the standard met, and the presumption favoring judicial review overcome, whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'   *Data Processing Serv. v. Camp*, 397 U.S. at 157, 90 S. Ct. at 832."   *Block,* 467 U.S. at 350-51, 104 S. Ct. at 2456.   Under *Block,* fairly discernible evidence of legislative intent to preclude judicial review can be found not only in the statute's express language, "but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."   *Block*, 467 U.S. at 345, 104 S. Ct. at 2453-54.   This Court recognized the *Block* rationale in *Pisano v. Shillinger,* 835 P.2d 1136, 1138-39 (Wyo. 1992).

[¶23]   In *Albertson's,* 2001 WY 98, 33 P.3d 161, we applied the test from *Block* to determine whether an unsuccessful applicant for transfer of a liquor license was entitled to judicial review of the city's denial decision.   We started with the express language of the statute and noted that it "only grants a right of appeal to applicants for renewal licenses or permits, and appeals by new applicants are categorically denied."   *Id.,* ¶ 9, 33 P.3d at 166.   The judicial review statute did not mention transfers at all.   In determining whether the presumption favoring judicial review should apply, we found it significant

that the statutory language did not "refer to appeals in a generic context." Instead, it expressly listed what parties could appeal and the types of decisions that could be appealed. We, therefore, concluded "the exclusion of the term 'transfer' from the provisions governing appeals [was] not a mere oversight, but rather it evidence[d] an affirmative legislative choice to limit such appeals." *Albertson's,* ¶¶ 9-10, 33 P.3d at 166. We also looked at the entire statutory scheme and its legislative history to finally determine that the legislature intended to limit judicial review to decisions specifically listed in the statute, and, because transfers were not included in the list, they were not subject to appeal. *Id.,* ¶¶ 15-24, 33 P.3d at 168-70.

## D. Application of *Block/Albertson's* to Present Case

[¶24] Applying this precedent in the case at bar, we must determine whether the legislature intended to limit judicial review to the decisions specifically listed in § 15-5-113 based upon: the statutory language setting out the right to judicial review of commission decisions; the civil service statutory scheme, its objectives, and the nature of the commission's administrative action; and the legislative history. Stated another way, we will decide whether legislative intent to withhold review of a commission decision refusing to consent to a city's discharge of an employee can be fairly discerned from the statutory scheme or whether the general presumption in favor of review should prevail.

### 1. Language of § 15-5-113

[¶25] Section 15-5-113 does not "refer to appeals in a generic context." *Albertson's,* ¶ 9, 33 P.3d at 166. Instead, it provides a discrete list of the types of commission decisions that are entitled to judicial review – "decisions discharging or reducing any person in rank or pay." Section 15-5-113. The only commission decisions delineated as subject to judicial review are those with adverse effects on the employee. The plain language of the statute, therefore, does not provide for judicial review of a commission decision refusing to consent to the city's discharge of an employee. Nevertheless, as the City argues, § 15-5-113 does not expressly preclude judicial review of a commission decision refusing to uphold the discharge. A simple application of the presumption in favor of judicial review, including the *Abbott Laboratories'* statement quoted in *Keslar,* 665 P.2d at 942, that "[t]he mere fact that some acts are made reviewable should not suffice to support an implication of exclusion," might result in a finding of reviewability. On the other hand, such a finding of reviewability would ignore the "detailed mechanism for judicial consideration of particular issues" chosen by the legislature, effectively rendering the plain language of the statute meaningless. *Block,* 467 U.S. at 349, 104 S. Ct. at 2456.

[¶26] In accordance with the cases decided after *Keslar,* we look beyond the fact that the language of the statute does not expressly preclude review to determine whether there is fairly discernible evidence that the legislature intended to limit judicial review to the

decisions specifically listed in § 15-5-113. In making that determination, we consider the other *Block* factors.

## 2. Structure and Objectives of Civil Service Statutory Scheme and the Nature of the Administrative Action

[¶27]  The structure and objectives of the civil service statutory scheme and the nature of the administrative action are relevant in determining whether the legislature intended to grant cities judicial review of commission decisions refusing to consent to discharges. Because these factors are related, we will consider them together. *See, e.g.*, *Albertson's, supra.*

[¶28] Wyo. Stat. Ann. §§ 15-5-101 through 122 (LexisNexis 2015) provides a comprehensive system for civil service commission regulation of fire and police department employment matters in municipalities with populations of 4,000 or more people. The civil service commission is appointed by the city's mayor and confirmed by the city's governing body. One of the three members of the commission may "be appointed from the governing body." Section 15-5-103. The commission is responsible for determining which persons are eligible for employment with fire and police departments. "Except as otherwise provided by law, no person may be employed or appointed in the fire or police department except from the list of eligible persons certified by the commission[] to the governing body." Section 15-5-105(a). The commission is also responsible for classifying the various employment positions within the departments, determining by examination whether individuals are fit to perform the services associated with their positions, and developing and enforcing rules for promotion. Sections 15-5-105 through 108, 119. *See, e.g.*, *City Council of Laramie v. Kreiling,* 911 P.2d 1037 (Wyo. 1996) (describing the role of the civil service commission in police department employment matters); *Tremblay v. Reid,* 700 P.2d 391 (Wyo. 1985) (upholding commission's enforcement of its medical and health requirements for firefighters).

[¶29] In addition to overseeing the hiring and promotion of all fire department employees, "no person may be discharged or reduced in pay or rank without **consent** of the commission." Section 15-5-112(b) (emphasis added). The city initiates the disciplinary action by filing written notice and specifications with the commission and serving the same upon the employee "**requesting** the discharge or reduction." *Id.* (emphasis added). The employee "whose discharge or reduction is sought is allowed a reasonable time to answer the charges in writing and demand a hearing." "After a **hearing or investigation**," the commission decides whether to "**consent**" to the city's action by determining if the "reason for discharge or reduction is sufficient and established." Section 15-5-112(b) (emphasis added).

[¶30] The civil service statutory scheme shows that the legislature intended for the commission to exercise the city's responsibilities for police and fire department

employment decisions. *See generally City of Rock Springs v. Police Protection Ass'n,* 610 P.2d 975 (Wyo. 1980) (reviewing the commission's responsibilities in appointing employee); *Fristam v. City of Sheridan,* 206 P.2d 741, 747 (Wyo. 1949) (stating the role of the commission is to provide a helping hand to the city in the efficient administration of municipal affairs). It is telling that, in § 15-5-112(b), the legislature referred to the city's notice of discharge as a "request"; directed that no employee discharge or reduction in grade or compensation can become final without commission "consent"; and gave the commission power to investigate and hold hearings on the disciplinary matters.

[¶31] The statutory scheme demonstrates that the commission is not an independent agency that reviews the city's final employment decision; instead, it plays an integral role in making employment decisions. The commission is, in all respects, the final decision maker for the city on department employment matters. The commission's action is, in effect, the city's action. In other words, the commission is acting for the city itself. *See City of Jackson v. Little,* 245 So. 2d 204 (Miss. 1971) (holding municipality could not appeal civil service commission decision because, under Mississippi law, the commission makes the city's final decisions on police department employment matters). *Compare Crofts v. State ex rel. Dep't of Game & Fish,* 2016 WY 4, 367 P.3d 619 (Wyo. 2016) (Office of Administrative Hearings is not connected to the Game & Fish Department and conducts independent review of the agency's employment decisions). Given the role the commission performs in all department employment matters, it is not surprising the legislature would have chosen to deny the city a right to challenge its own (the commission's) final employment decision in court by limiting judicial review to employee challenges of discharge or reduction in pay or rank decisions.

[¶32] The *Keslar* decision implicitly recognized that the commission was the city's final decision maker when it named the commission, rather than the department or city, as the respondent/appellee on appeal. That alignment of parties shows that the city was not a separate party from the commission, but rather, the commission's decision was the city's decision. Similarly, in the unemployment insurance context, the department and commission are aligned as parties when commission decisions are appealed and the commission is often named as the respondent in such actions. *See, e.g., Koch v. Dep't of Employment, Unemployment Ins. Comm'n,* 2013 WY 12, 294 P.3d 888 (Wyo. 2013); *Clark v. State, ex rel. Dep't of Workforce Services, Unemployment Ins. Comm'n,* 2016 WY 89, 378 P.3d 310 (Wyo. 2016).

[¶33] In addition, the scope of judicial review under § 15-5-113 is the same as the scope of the commission's administrative decision-making in § 15-5-112(b). If the legislature had intended to allow judicial review of all commission decisions, including those adverse to the city such as a decision not to consent to a discharge, it logically would have expanded the list of decisions subject to judicial review beyond those subject to commission review.

[¶34] Finally, the civil service statutes demonstrate an overall legislative intent to protect police and fire department employees from unjustified discharge or reduction decisions. Section 15-5-112(b) allows discharge for any cause that will promote the efficiency of the service, so long as it is not political or religious in nature. The intent to protect employees from the vagaries of politics within the department is also demonstrated in § 15-5-116 which prohibits discharging or changing the amount of compensation of any employee, or promising or threatening to do so, for "giving, withholding or neglecting to make contributions or perform services for any political purpose" and officers or employees from soliciting "political contributions from any civil service employee." Giving employees the right to judicial review of commission decisions adverse to them furthers that legislative purpose. *See generally Anderson v. City of Sioux Falls,* 384 N.W.2d 666, 669 (S.D. 1986) (stating the fundamental purpose of civil service laws is to establish a merit system for selection of public service employees based upon competence, without regard to political considerations, and to safeguard employees against unjust charges of misconduct and inefficiency and from being discriminated against for religious or political reasons). That purpose would not be similarly advanced by giving the city the right to judicial review of commission decisions. *But*, *see generally*, *City of Casper v. Utech,* 895 P.2d 449 (Wyo. 1995) (considering, without a discussion of jurisdiction or the applicable statutes, city's appeal from decision of personnel board (not civil service commission) that there was insufficient evidence to support Utech's discharge).

### 3. Legislative History

[¶35] The history of the relevant statutes is also important in the search for the legislature's intent with regard to the right of judicial review of agency decisions. *See Block* and *Albertson's, supra.* Originally, there were separate civil service statutory schemes for police and fire departments. The first civil service statutes pertaining to fire departments were adopted in 1933. At that time, like now, employees who were discharged or reduced in grade or compensation were given the right to a hearing or investigation by the commission to determine if the employment decision was "sufficient and established." The 1933 legislation did not provide any right to judicial review of commission decisions. 1933 Wyo. Sess. Laws, ch. 49 § 11. In 1937, the legislature authorized civil service commissions for police departments and provided for commission and judicial review of discharge decisions. 1937 Wyo. Sess. Laws, ch. 69 §§ 13-14.

[¶36] By 1965, police and fire departments were addressed together in the statutes, and the law included a right to judicial review of commission decisions:

> **The decision of the commission discharging or reducing any person in rank or pay may be reviewed by the district court** upon appeal in the following manner: The

12

> appeal shall be taken by filing written notice within ten (10) days after the decision with the clerk of the city or town, and the clerk of the district court . . . When the notice of appeal is filed with the clerk of the district court, **the appellant shall** at that time execute and **file a sufficient bond** in the penal sum of two hundred dollars ($200.00) with at least two sureties, approved by the clerk and **conditioned to prosecute the appeal without delay and, if unsuccessful, to pay all costs to which the city is put by reason of the appeal.**

Wyo. Stat. Ann. § 15.1-294 (1965) (emphasis added). The opening statement which describes appealable orders mirrors the current statute by focusing on decisions adverse to the employee, i.e., "[t]he decision of the commission discharging or reducing any person in rank or pay may be reviewed by the district court." The 1965 statute also required "the appellant" to post a bond "conditioned to prosecute the appeal without delay and, if unsuccessful, to pay all costs to which the city is put by reason of the appeal." Under this language, "the appellant" can only be the employee because it is illogical to require a city to post a bond recoverable by itself and because there is no reciprocal provision allowing an employee to claim against a bond posted by the city.

[¶37] In 1980, the legislature revised and renumbered the entire Title 15 which governs cities and towns to, in relevant part, eliminate obsolete or fully executed statutes, conform conflicting statutes, and eliminate duplicative or archaic language. Wyo. Laws 1980, ch. 38, preamble. The section providing for judicial review of civil service commission decisions was renumbered as § 15-5-113. The legislature retained the language authorizing judicial review of decisions "discharging or reducing any person in rank or pay" and adopted the procedure for judicial review in Rule 12 of the Wyoming Rules of Appellate Procedure. *Id.*

[¶38] In the 1980 revision of the judicial review statute, the language requiring the appellant to post a bond which would pay the city's costs on appeal was omitted. As the preamble to the 1980 legislation stated, the legislature intended to modernize the statutory language, which included recognition of the specific procedures applicable to appeals from administrative decisions. Replacing the earlier language governing how to prosecute appeals of commission decisions with the W.R.A.P. 12 procedures was consistent with the purposes expressed in the preamble. It is not surprising the bond requirement was removed because Rule 12, which tracks the WAPA and sets forth procedures for judicial review of administrative decisions, generally does not require bonds.

[¶39] Importantly, the 1980 version of the statute did not change the language about the types of commission decisions that could be reviewed by the district court. Instead of making a generic statement such as "the decision of the commission may be reviewed by

13

the district court," it retained language authorizing judicial review of commission "decisions discharging or reducing any person in rank or pay." It, therefore, preserved the language which expressly allows for appeals only from decisions adverse to the employee. Unless this language limits judicial review to only those specific adverse decisions, it has no meaning at all.

[¶40] We conclude it is "fairly discernible" from the plain language of § 15-5-113, the entire civil service statutory scheme, the nature of commission action in department disciplinary actions, and the legislative history of the statutes providing for judicial review of commission decisions that the legislature intended only decisions adverse to the employee be subject to judicial review. The legislature did not expressly grant cities the right to judicial review of commission decisions refusing to consent to discharges of employees, and other indicators of legislative intent show that it did not mean to extend that right to cities. Given the right to judicial review of agency decisions is entirely statutory, the presumption in favor of review cannot be used to create a right that was not provided by statute and would be inconsistent with the civil service statutory scheme.

[¶41] The City also appears to argue that this Court ruled in *Keslar* that any time an agency like the Commission adopts WAPA procedures, the parties have the right to judicial review. The City overstates the holding in *Keslar*. As noted above, the *Keslar* decision stated that because the city gave Keslar the opportunity for an administrative hearing on his suspension, the law of the case was that Keslar's suspension without pay amounted to a reduction in pay. That ruling brought the case directly under § 15-5-113 because reductions in pay are specifically subject to judicial review. Consequently, *Keslar* does not stand for the broad proposition that any time an agency adopts WAPA procedures or provides for an administrative hearing, any party to the hearing will automatically acquire a right to judicial review of the agency decision.

[¶42] Further, the City's assertion that the right to judicial review is created any time an agency adopts WAPA procedures is not consistent with § 16-3-114(a) which specifically allows the legislature to preclude or limit judicial review of agency decisions. The City's argument suggests that an agency can create the right to judicial review when the legislature has not authorized it. That is clearly inconsistent with our law which states that the right to judicial review of administrative decisions is entirely statutory, the absence of subject matter jurisdiction cannot be waived, and jurisdiction cannot be created by agreement between the parties. *Edsall,* ¶ 10, 375 P.3d at 802; *Casper Iron & Metal,* 845 P.2d at 391; *North Laramie Land Co. v. Hoffman,* 26 Wyo. 327, 329, 184 P. 226, 228 (1919).[4]

---

[4] This case also raises the issue of whether a city/municipality, acting as employer, is a "person" to qualify for judicial review of agency action under § 16-3-114(a). Because our decision that the legislature did not authorize judicial review of the Commission's decision refusing to consent to Mr. Vance's discharge fully disposes of this case, we do not need to address that issue.

# CONCLUSION

[¶43] The express language of § 15-5-113 grants the right to judicial review of decisions adverse to the employee. It does not, on its face, permit judicial review of commission decisions refusing to consent to a discharge. Even without an express statutory grant, the presumption in favor of reviewability could justify granting cities the right to review unless there is fairly discernible evidence that the legislature did not intend to allow it. The civil service statutory scheme, which gives commissions broad powers over department employment matters, and the legislative history of the right to judicial review of commission decisions provide fairly discernible evidence that the legislature intended for the commissions to be the cities' final decision-makers and did not intend for cities to have judicial review of commission decisions refusing to consent to discharge. It would be improper to use a presumption to contradict the legislature's intent as reflected in the plain language of the statute, the statutory scheme, and the legislative history.

[¶44] Under the civil service statutes, Commission Decision #2 refusing to consent to Mr. Vance's discharge was final and was not subject to judicial review. The district court did not have jurisdiction to consider the City's petition for judicial review. Consequently, its decision reversing and remanding Commission Decision #2 is void and, hereby, vacated. In addition, all of the proceedings that followed Commission Decision #2 were improper, meaning that Commission Decision #3 and the district court's dismissal of Mr. Vance's petition for review of that decision are void and, hereby, vacated. Because the district court did not have jurisdiction over the matter, we, likewise, lack jurisdiction beyond determining that the district court had no jurisdiction to review Commission Decision #2. *Rock v. Lankford,* 2013 WY 61, ¶ 18, 301 P.3d 1075, 1080 (Wyo. 2013), quoting *Hall v. Park Cnty.,* 2010 WY 124, ¶ 3, 238 P.3d 580, 581 (Wyo. 2010). This appeal is, therefore, dismissed.