# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 10

**OCTOBER TERM, A.D. 2022**

January 31, 2023

CAMPBELL COUNTY BOARD OF
COMMISSIONERS,

Appellant
(Respondent),

v.                                              S-22-0114

WYOMING HORSE RACING, LLC and
WYOMING DOWNS, LLC,

Appellees
(Petitioners).

*Appeal from the District Court of Campbell County*
*The Honorable F. Scott Peasley, Judge*

*Representing Appellant:*
> Patrick M. Brady and John A. Sundahl, Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming; Thomas A. Thompson, MacPherson & Thompson, LLC, Buffalo, Wyoming. Argument by Mr. Brady and Mr. Sundahl.

*Representing Appellees:*
> Bradley T. Cave, Matthew J. Micheli, and Macrina M. Sharpe, Holland & Hart, LLP, Cheyenne, Wyoming; Robert C. Jarosh and Traci L. Lacock, Hirst Applegate LLP, Cheyenne, Wyoming. Argument by Mr. Jarosh.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    The Wyoming Pari-Mutuel Act (the "Pari-Mutuel Act") governs pari-mutuel events and wagering in Wyoming.[1]    Under the Pari-Mutuel Act, the Wyoming Gaming Commission ("Gaming Commission") is tasked with permitting and regulating pari-mutuel and simulcast events.[2]    Before the Gaming Commission may issue permits to a corporation seeking to conduct pari-mutuel events and simulcasting, the corporation must obtain the approval of the board of county commissioners in each county where they intend to operate. Wyo. Stat. Ann. § 11-25-102(a)(vii)(A), (B); Wyo. Stat. Ann. § 11-25-201(a). This case turns on whether a board of county commissioners can revoke its prior approvals after the Gaming Commission has issued the permits and authorized simulcasting.

[¶2]    In April 2021, the Campbell County Board of Commissioners ("Campbell County") adopted Resolution 2077, which "revoked and superseded" previous resolutions approving Wyoming Horse Racing, LLC and Wyoming Downs, LLC ("Petitioners") to conduct simulcast operations under Wyo. Stat. Ann. § 11-25-102(a)(vii)(B). Resolution 2077 also placed conditions on all future approvals. Petitioners sought judicial review of Resolution 2077 under the Wyoming Administrative Procedure Act ("WAPA"), asserting the resolution exceeded Campbell County's statutory authority under the Pari-Mutuel Act.[3] The district court agreed and set aside the resolution under WAPA. Wyo. Stat. Ann. § 16-3-114(c)(ii)(C) (LexisNexis 2021). Campbell County appeals. Wyo. Stat. Ann. § 16-3-114(a); W.R.A.P. 12.11. We affirm.

### ISSUE

[¶3]    The dispositive issue is:

> Whether Campbell County has authority under the Pari-Mutuel Act to revoke its prior approvals of Petitioners' simulcast operations.

---

[1] Wyo. Stat. Ann. § 11-25-101 *et seq.* (LexisNexis 2021); 1967 Wyo. Sess. Laws, ch. 245 (enacting the "Wyoming Pari-Mutuel Act").

[2] Wyo. Stat. Ann § 11-25-104. Pari-mutuel events are defined as "events which are authorized by the [Gaming Commission] for the conduct of horse racing (to include quarter horse, thoroughbred or other approved races), harness racing, cutter racing, chariot racing, chuckwagon racing, professional roping and rodeo events[.]" Wyo. Stat. Ann. § 11-25-102(a)(v). The Pari-Mutuel Act also governs simulcasting, referred to as "off-track betting," which it defines as "the sale of pari-mutuel pools electronically transmitted live or historic on interstate or intrastate pari-mutuel events as prescribed by the [Gaming Commission]." Wyo. Stat. Ann. § 11-25-102(a)(vii).

[3] Petitioners also filed an action for declaratory judgment against Campbell County, which remains pending in the district court.

1

## FACTS

[¶4]   In 2013, Campbell County adopted Resolutions 1801 and 1804 approving Petitioners to operate pari-mutuel wagering on live horse racing, historic horse racing, and simulcast events in Campbell County.  After Campbell County gave its approvals, the Gaming Commission issued pari-mutuel and simulcast permits to Petitioners authorizing them to operate in the county.  Wyoming Downs conducted their simulcast operation out of a satellite facility in Gillette.  In 2014, Campbell County approved a change of address for Wyoming Downs' satellite facility.  In 2020, Campbell County approved an additional Wyoming Downs satellite facility in Gillette.[4]

[¶5]   According to Campbell County, its purpose in approving Petitioners' operations was to promote live horse racing in the county because it recognized "the economic and community benefits[.]"  Campbell County contends that by 2020 Petitioners' operations were not meeting the purpose of the 2013 resolutions because only a small number of live horse races had occurred during the previous six years.  Following a public hearing, Campbell County adopted Resolution 2077 to attempt to remedy that situation.

[¶6]   Most relevant here, Resolution 2077 states that "[t]he previous resolutions of the Campbell County Board of Commissioners concerning approval of simulcasting off of permitted live horse racetrack premises are hereby **revoked and superseded** by this Resolution."[5]  (Emphasis added).  This revocation provision prevented Petitioners from operating as they had under the prior resolutions.

---

[4] Campbell County appears to have approved Wyoming Downs' satellite facilities pursuant to Gaming Commission Rules, Ch. 10, § 3(d), which states "[f]inal approval of a satellite facility within each county shall come from the county commissioners board and such approval shall be filed with the Commission prior to the conducting of simulcasting in that county."  The parties do not dispute the application of this rule.

[5] Resolution 2077 also placed conditions on all future approvals, stating:

> Pursuant to its authority set forth in W.S. 11-25-102(a)(vii)(B), the Campbell County Board of Commissioners will only approve simulcasting to be conducted off of a permitted live horse [racetrack] premises within Campbell County under one of the following conditions:
>
> (1) the simulcasting operator is a live horse racing operator that is both (i) licensed to conduct the minimum live race days required under W.S. 11-25-104(m) and WY Rules and Regulations 038.0001.10 § 3 within Campbell County on an annual basis and (ii) conducting said live horse racing consistent with the aforementioned statute and regulation (excepting days that are cancelled for good cause due to weather or other uncontrollable circumstances); or
>
> (2) if the simulcasting operator does not satisfy the first requirement, then such simulcasting operator may conduct simulcasting off of a permitted

[¶7]    Petitioners timely sought judicial review under WAPA, arguing Campbell County exceeded its statutory authority under the Pari-Mutuel Act.  They asked the district court to set aside Resolution 2077.  The court entered its order on Petitioners' appeal in March 2022, holding the revocation provision fell outside Campbell County's statutory authority under Wyo. Stat. Ann. § 11-25-201(a).  In so holding, the court ordered Resolution 2077 be set aside under Wyo. Stat. Ann. § 16-3-114(c)(ii)(C).  The court deemed it unnecessary to address Petitioners' remaining issues, including whether Resolution 2077's conditions on future approvals also exceeded Campbell County's statutory authority.

[¶8]    Campbell County timely appealed.

## *DISCUSSION*

[¶9]    As a threshold matter, Campbell County asserts courts lack jurisdiction to review Resolution 2077 because it was a legislative act immune from judicial review.  We review jurisdictional challenges de novo.  *McCallister v. State ex rel. Dep't of Workforce Servs.*, *Workers' Comp. Div.*, 2019 WY 47, ¶ 10, 440 P.3d 1078, 1081 (Wyo. 2019) (citing *Vance v. City of Laramie*, 2016 WY 106, ¶ 10, 382 P.3d 1104, 1106 (Wyo. 2016)); *Wyo. Cmty. Coll. Comm'n v. Casper Cmty. Coll. Dist.*, 2001 WY 86, ¶ 12, 31 P.3d 1242, 1247–48 (Wyo. 2001) ("The first and fundamental question on every appeal is that of jurisdiction[.]" (citation omitted)).

[¶10]  "The right of judicial review of an administrative decision is statutory." *Holding's Little Am. v. Bd. of Cty. Comm'rs of Laramie Cty.*, 670 P.2d 699, 702 (Wyo. 1983).  Wyo. Stat. Ann. § 16-3-114(a) provides:

> (a) Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judicial review, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, **or by other agency action or inaction** . . . is entitled to judicial review in the district court for the county in which the injury or harm for which relief is sought occurred[.]

---

live horse racetrack premises within Campbell County only if written approval is given by any simulcasting operator that is licensed to conduct the minimum live race days required under W.S. 11-25-104(m) and WY Rules and Regulations 038.0001.10 § 3 within Campbell County on an annual basis and conducts said live horse racing consistent with the aforementioned statute and regulation (excepting days that are cancelled for good cause due to weather or other uncontrollable circumstances).

Wyo. Stat. Ann. § 16-3-114(a) (emphasis added); *see also* W.R.A.P. 12.01. No one disputes the Campbell County Board of Commissioners is an agency as defined by WAPA. *Holding's Little Am.*, 670 P.2d at 701–02 ("The board of county commissioners is an agency as defined by the Wyoming Administrative Procedure Act[.]"); *see* Wyo. Stat. Ann. § 16-3-101(b)(i) (LexisNexis 2021) (defining "agency"). Further, "[a]n aggrieved party may obtain review of any final judgment of the district court by appeal to the supreme court." W.R.A.P. 12.11(a).

[¶11] Where, as here, there is no issue as to the exhaustion of administrative remedies, WAPA makes clear judicial review for an aggrieved or adversely affected party is limited only if a "statutory or common-law provision" expressly precludes or limits judicial review. Wyo. Stat. Ann. § 16-3-114(a). Campbell County cites nothing in the Pari-Mutuel Act or other statutes preventing courts from reviewing Resolution 2077 and we have found no such statutory provision. *See* Wyo. Stat. Ann. § 11-25-101 *et seq.*

[¶12] Campbell County instead relies on a common law doctrine which states "the provisions of the Administrative Procedure Act do not apply to legislative actions or hearings." *See Holding's Little Am.*, 670 P.2d at 702. *See also McGann v. City Council of City of Laramie*, 581 P.2d 1104 (Wyo. 1978); *Lund v. Schrader*, 492 P.2d 202 (Wyo. 1971); *Scarlett v. Town Council, Town of Jackson, Teton Cty.*, 463 P.2d 26 (Wyo. 1969). This Court has stated whether an agency's "action is legislative is usually determined by comparison with adjudicatory proceedings." *Holding's Little Am.*, 670 P.2d at 702 (citation omitted). When an agency acts legislatively it tends to "produce[] a general rule or policy which applies to a general class of individuals, interests, or situations." *Id.* Whereas the agency's "adjudicatory functions apply generally to identifiable persons and specific situations." *Id.* (citing 1 Am. Jur. 2d *Administrative Law* § 164).

[¶13] Accordingly, Campbell County seeks to avoid judicial scrutiny of Resolution 2077 by characterizing it as a single policy decision based on "a legislative choice of general applicability." We, like the district court, conclude the County's characterization of Resolution 2077 is too broad. As noted, Resolution 2077 did generally impose conditions on all future approvals for simulcasting, but the County cannot gloss over that the resolution also specifically revoked its prior approvals of Petitioners' operations.

[¶14] The revocation provision clearly "aggrieved or adversely affected" Petitioners, as they claimed the Gaming Commission required them to shut down their operations prior to the resolution taking effect. The County does not dispute this point. Judicial review of Resolution 2077 is therefore allowed under Wyo. Stat. Ann. § 16-3-114(a) and W.R.A.P. 12.01. *See also* W.R.A.P. 12.11.

[¶15] Our review of Resolution 2077 is governed by Wyo. Stat. Ann. § 16-3-114(c), which states:

4

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

. . . .

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right[.]

Wyo. Stat. Ann. § 16-3-114(c)(ii)(C).

[¶16] When we consider an appeal from the district court involving review of an agency action, "we afford no special deference to the district court's decision[.]" *Lemus-Frausto v. State*, 2022 WY 154, ¶ 8, 520 P.3d 1152, 1155 (Wyo. 2022) (citations omitted). Instead, we review the action "as if it came to us directly from the agency." *Id.* (citations omitted); *City of Rawlins v. Schofield*, 2022 WY 103, ¶ 20, 515 P.3d 1068, 1075 (Wyo. 2022) (citation omitted). Our review under Wyo. Stat. Ann. § 16-3-114(c)(ii)(C) requires us to interpret the relevant provisions of the Pari-Mutuel Act, "which is a matter of law subject to de novo review." *WPX Energy Rocky Mountain, LLC v. Wyo. Dep't of Revenue*, 2022 WY 104, ¶ 15, 516 P.3d 449, 453 (Wyo. 2022) (citation omitted).

[¶17] When interpreting the Pari-Mutuel Act:

[O]ur goal is to give effect to the intent of the legislature, and we "attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute." Where legislative intent is discernible a court should give effect to the "most likely, most reasonable, interpretation of the statute, given its design and purpose."

We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning

5

of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*Bd. of Tr. of Laramie Cty. v. Bd. of Cty. Comm'rs of Laramie Cty.*, 2020 WY 41, ¶ 11, 460 P.3d 251, 256 (Wyo. 2020) (quoting *Herrick v. Jackson Hole Airport Bd.*, 2019 WY 118, ¶ 20, 452 P.3d 1276, 1282 (Wyo. 2019)).

[¶18] It is well established a county has "no sovereignty independent from that of the state, and the only power available to [it] is the power that has been delegated to [it] by the state." *Id.* ¶ 12, 460 P.3d at 256–57 (quoting *Seherr-Thoss v. Teton Cty. Bd. Of Cty. Comm'rs*, 2014 WY 82, ¶ 24, 329 P.3d 936, 946 (Wyo. 2014)). Therefore, "the county has only those powers expressly granted by the constitution or statutory law or reasonably implied from powers granted." *Id.* ¶ 12, 460 P.3d at 257 (quoting *Ford v. Bd. of Cty. Comm'rs of Converse Cty.*, 924 P.2d 91, 95 (Wyo. 1996)). We have identified three sources of delegated power: "[f]irst, those granted by express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes not simply convenient, but indispensable." *Id.* (quoting *Schoeller v. Bd. of Cty. Comm'rs of Park Cty.*, 568 P.2d 869, 876 (Wyo. 1977)). It is for the courts to resolve "[a]ny fair, reasonable, substantial doubt concerning" the scope of a county's power and we must resolve any such doubt against the county. *Id.* (citation omitted).

[¶19] Campbell County asserts Wyo. Stat. Ann. § 11-25-102(a)(vii)(B) and Wyo. Stat. Ann. § 11-25-201(a) provide counties with express and implied statutory authority to revoke prior simulcast approvals as it did in Resolution 2077. To address Campbell County's argument we consider what, if any, power the legislature delegated to the County under the Pari-Mutuel Act.

[¶20] The Pari-Mutuel Act states the Gaming Commission "shall authorize simulcasting subject to" several conditions. Wyo. Stat. Ann. § 11-25-102(a)(vii). Two of those conditions involve county approval. Wyo. Stat. Ann. § 11-25-102(a)(vii)(A), (B). The first condition provides, in part, that "[s]imulcasting may be conducted only by a holder of a permit to simulcast issued under this act." Wyo. Stat. Ann. § 11-25-102(a)(vii)(A). The Gaming Commission "shall issue a simulcast permit only to an applicant authorized under this act to conduct a pari-mutuel event other than simulcasting[.]" *Id.* To conduct a pari-mutuel event, a corporation must hold a pari-mutuel permit. Wyo. Stat. Ann. § 11-25-

6

104(e); *see also* Wyo. Stat. Ann § 11-25-104(f) ("No person shall hold any event with pari-mutuel wagering without obtaining a permit."). The Pari-Mutuel Act expressly conditions the issuance of a pari-mutuel permit from the Gaming Commission on a county's approval of the corporation seeking the permit. Wyo. Stat. Ann. § 11-25-201(a) states, in part:

> The [Gaming Commission] may issue pari-mutuel permits for a specified period not to exceed three (3) years from the date of issuance to any Wyoming county, city, incorporated town, county fair board or any corporation or association which has been **approved by the board of county commissioners** and provides a bond acceptable to the commission.

Wyo. Stat. Ann. § 11-25-201(a) (emphasis added).[6] Thus, for a corporation to be issued a simulcast permit by the Gaming Commission, the corporation must also have the county's approval for a pari-mutuel permit.

[¶21] The second condition states: "[s]imulcasting may be conducted off the permitted premises only if **the board of county commissioners of the county in which such simulcasting will be conducted [grants] its approval**[.]" Wyo. Stat. Ann. § 11-25-102(a)(vii)(B) (emphasis added).

[¶22] Based on the plain language of §§ 11-25-102(a)(vii)(A), (B), and 11-25-201(a) quoted above, the legislature clearly delegated Campbell County the authority to approve a corporation as a condition precedent to the Gaming Commission issuing a pari-mutuel permit (and, in turn, a simulcast permit) and authorizing simulcast operations off the permitted premises. *See* Wyo. Stat. Ann. § 11-25-102(a)(vii)(A), (B); Wyo. Stat. Ann. § 11-25-201(a). The County has no permitting authority under these provisions and nothing in this statutory language authorizes Campbell County to revoke an approval after the Gaming Commission has issued the permits and authorized simulcasting. *See id.*

[¶23] Reading these provisions *in pari materia* with the Pari-Mutuel Act as a whole, it is quite clear the Pari-Mutuel Act expressly delegates broad authority to the Gaming Commission to issue and regulate pari-mutuel and simulcast permits. Wyo. Stat. Ann.

---

[6] Campbell County asserts for the first time on appeal to this Court that Petitioners are required to seek Campbell County's approval prior to renewing their permits under Wyo. Stat. Ann. §§ 11-25-102(a)(vii)(B) and 11-25-201(a) and that Petitioners' current permits are therefore invalid. "[T]his Court will not consider an issue raised for the first time on appeal unless it is jurisdictional or of such fundamental nature that it must be considered." *Colton v. Town of Dubois*, 2022 WY 138, ¶ 2 n.1, 519 P.3d 976, 978 n.1 (Wyo. 2022) (quoting *Moses Inc. v. Moses*, 2022 WY 57, ¶ 12, 509 P.3d 345, 350 (Wyo. 2022)). "This rule is equally applicable to appeals from administrative decisions as to those from district courts." *State ex rel. Dep't of Family Servs. v. Kisling*, 2013 WY 91, ¶ 14, 305 P.3d 1157, 1162 (Wyo. 2013) (citation omitted). The renewal issue is not jurisdictional, and Campbell County has not shown the issue is fundamental. We will therefore not address it.

§ 11-25-104(e) expressly grants the Gaming Commission power to "license or permit and supervise all the conduct of all events provided for and regulated by this act." It further grants the Gaming Commission rulemaking power, stating "[t]he commission may make reasonable rules for the control, supervision and direction of applicants, permittees and licensees." *Id.*; *see also* Wyo. Stat. Ann. § 11-25-102(a)(vii)(D) ("The commission shall promulgate rules for conducting simulcasting as are reasonably necessary to protect the public interest."). Additionally, once a corporation is approved by the county commissioners, the Gaming Commission is expressly authorized to "issue, amend or refuse to issue permits in its discretion." Wyo. Stat. Ann. § 11-25-201(f). Perhaps most important, Wyo. Stat. Ann. § 11-25-201(a) expressly mandates that the Gaming Commission, and only the Gaming Commission, must revoke a permit under certain circumstances. The Pari-Mutuel Act contains no other provision expressly referring to permit revocation. The plain language of the Pari-Mutuel Act thus demonstrates the legislature intended the Gaming Commission, not counties, to have sole authority over the issuance, administration, and revocation of pari-mutuel and simulcast permits once county commissioners give their initial approval.

[¶24] Campbell County nevertheless contends its authority to revoke prior approvals is "necessarily or fairly implied in or incident to" the County's approval authority in §§ 11-25-102(a)(vii)(B) and 11-25-201(a). *Bd. of Tr. of Laramie Cty.*, ¶ 12, 460 P.3d at 257 (quoting *Schoeller*, 568 P.2d at 876). The parties do not dispute the County has implied authority under §§ 11-25-102(a)(vii)(A) and 11-25-201(a) to deny, instead of approve, a corporation's request for approval. However, they dispute whether that implied authority extends to the revocation of prior approvals once the Gaming Commission has issued the permits and authorized simulcasting.

[¶25] Campbell County's implied authority argument is unavailing. The County cites *Hyde v. Bd. of Comm'rs of Converse Cty.*, 31 P.2d 75 (Wyo. 1934) to support its contention that the power to revoke is necessarily implied from its power to approve.[7] *Hyde* is readily distinguished from this case. In *Hyde*, a statute authorized county commissioners to "co-operate in extension work in agriculture and home economics" and "to appropriate and expend out of county funds not otherwise appropriated, such moneys as they may deem expedient for the purposes of such work[.]" *Id.* at 76 (quoting Wyo. Rev. St. 1931, § 108-

---

[7] Campbell County also relies on Eugene McQuillin, *The Law of Municipal Corporations*, § 21:10, 370 (3d ed. 2007), which states the "[s]pecific grant of power to repeal ordinances, however, ordinarily is not necessary since it is the general rule that power to enact ordinances implies power, unless otherwise provided in the grant, to repeal them." This reliance is also misplaced, as "the powers of a county are usually more restricted than those of a municipal corporation." *Bd. of Tr. of Laramie Cty.*, ¶ 12, 460 P.3d at 257 (quoting *Vandehei Developers v. Public Serv. Comm'n of Wyo.*, 790 P.2d 1282, 1286 (Wyo. 1990)). "Municipal corporations proper have large local police powers, the delegated right of local legislation granted by the legislature," e.g., the power to enact and repeal ordinances, while counties usually have no such powers. *Schoeller*, 568 P.2d at 875 (citation omitted); *see Bd. of Tr. of Laramie Cty.*, ¶ 16, 460 P.3d at 258.

8

602). In accordance with that statute, the Board of Commissioners of Converse County adopted a resolution to appropriate funds for an extension agent. *Id.* at 77. Soon after, board membership changed and the new board refused to appropriate any more funds. *Id.*

[¶26] On appeal, this Court considered the statutory authority granted to Converse County and upheld its decision to cease appropriating funds to the extension agent. *Id.* at 77, 80. We reasoned:

> All things considered, we regard it as plain that, in a matter of the kind now before us, the Legislature . . . never thought that one board of county commissioners in a county should have the exclusive right to determine the moneys to be deemed "expedient" for agricultural extension work, as against all its successors in office. In putting the stamp of its approval upon that act, the lawmaking body can hardly have believed that any single county board would be clothed with vision sufficient to unerringly determine in advance what the scroll of the future should be when fully unrolled. Changing conditions frequently require that what is expedient for one year be deemed as quite inexpedient for the following year, in handling county affairs.

*Id.* at 79.

[¶27] Campbell County uses the above quote to argue the power to revoke prior approvals must be implied in the approval authority it exercises under the Pari-Mutuel Act, otherwise it would be permanently bound by the decisions of a previous board of county commissioners. *Hyde*, however, relied on the nature of the express statutory authority delegated to the county. *See id.* The statute expressly authorized Converse County to exercise ongoing discretion to "appropriate and expend out of county funds . . . as **they may deem expedient** for the purposes of [extension] work." *Id.* (quoting Wyo. Rev. St. 1931, § 108-602) (emphasis in original). In contrast, the Pari-Mutuel Act only allows Campbell County to approve (or, impliedly, to deny) a corporation's request for approval for a pari-mutuel permit or simulcasting off the permitted premises, as a condition precedent to the Gaming Commission even issuing the permit or authorizing the simulcasting. *Compare id.*, *with* Wyo. Stat. Ann. § 11-25-201(a); Wyo. Stat. Ann. § 11-25-102(a)(vii)(B).

[¶28] We recently rejected an argument similar to Campbell County's in *Bd. of Tr. of Laramie Cty.*, 2020 WY 41, 460 P.3d 251. In that case, the Board of County Commissioners of Laramie County passed a resolution dissolving its county fair board and assigning a new entity to operate the county fair. *Id.* ¶ 1, 460 P.3d at 253. The fair board sought a declaration in the district court that the resolution was contrary to Wyo. Stat. Ann. §§ 18-9-101 and 102. *Id.* ¶¶ 1, 10, 460 P.3d at 253, 255. The parties agreed these statutes

gave the county commissioners express authority to create a fair board but did not agree whether the statutes also granted the county implied authority to dissolve the fair board. *Id.* ¶ 11, 460 P.3d at 256.

[¶29]   Laramie County relied in part on *Mariano & Assoc., P.C. v. Bd. of Cty. Comm'rs of the Cty. of Sublette*, 737 P.2d 323 (Wyo. 1987) to support its action. *Bd. of Tr. of Laramie Cty.*, ¶ 17, 460 P.3d at 258–59 (discussing *Mariano*, 737 P.2d 323). *Mariano* stated, "a board, officer or governing body should not contract away either the discretion of future decision makers or more importantly the fiscal welfare of the citizens that they were elected or appointed to serve." *Id.* ¶ 17, 460 P.3d at 258 (quoting *Mariano*, 737 P.2d at 329). We rejected the county's argument because "*Mariano* concerned whether 'a contract with a governmental entity which extends beyond the contracting official's term of office' was voidable by subsequent officials[,]" and the dissolution of the fair board did not raise a question of whether Laramie County had its discretion contracted away by previous county officials. *Id.* ¶ 17, 460 P.3d at 259 (quoting *Mariano*, 737 P.2d at 324). Rather, "our task [was] to determine what discretion to dissolve the Fair Board, if any, the legislature ha[d] granted [Laramie County]." *Id.*

[¶30]   We therefore looked to the plain language of Wyo. Stat. Ann. §§ 18-9-101 and 102 and concluded "appointment of a board of trustees is the only way in which [Laramie County] can conduct a county fair." *Id.* ¶¶ 10, 18–19, 460 P.3d at 255–56, 259–60 (emphasis omitted). In other words, we relied on "[t]he rules of statutory construction, along with the restrictive approach our precedent takes to county powers," to conclude that because Laramie County had no other authority by which to conduct its county fair, it had no implied authority to dissolve the fair board. *Id.* ¶ 19, 460 P.3d at 260.

[¶31]   Similarly, we conclude here that the Legislature only granted Campbell County the power to approve (or deny) a corporation's proposed operation as a condition precedent to the Gaming Commission issuing a pari-mutuel permit or authorizing the corporation to conduct simulcasting off the permitted premises. Wyo. Stat. Ann. § 11-25-201(a); Wyo. Stat. Ann. § 11-25-102(a)(vii)(B). Campbell County's claimed implied power to revoke its prior approvals is not necessarily or fairly implied in or incident to its express power to approve. Nor is it claimed the implied power to revoke is essential or indispensable to the purpose for which the Gaming Commission needs a county's approval prior to issuing permits in the first instance.

[¶32]   Even if we harbored any doubt, our precedent requires us to resolve such doubt against the County and deny it the power to revoke prior approvals under Wyo. Stat. Ann. §§ 11-25-102(a)(vii)(B) and 11-25-201(a). *See Bd. of Tr. of Laramie Cty.*, ¶ 12, 460 P.3d at 257. By stating "[t]he previous resolutions of the Campbell County Board of Commissioners concerning approval of simulcasting off of permitted live horse racetrack premises are hereby revoked and superseded by this Resolution," Campbell County

exceeded its authority under the Pari-Mutuel Act. Wyo. Stat. Ann. § 16-3-114(c)(ii)(C). Therefore, Resolution 2077 cannot stand. *Id.*

## *CONCLUSION*

[¶33] Petitioners, being adversely affected by Resolution 2077, are entitled to judicial review of the resolution under WAPA and W.R.A.P. 12.01. Interpreting de novo the plain and unambiguous language of the Pari-Mutuel Act, we conclude Campbell County lacks any express or implied authority to revoke its prior approvals of Petitioners' pari-mutuel and simulcast operations. The district court was therefore correct when it set aside Resolution 2077 under Wyo. Stat. Ann. § 16-3-114(c)(ii)(C). We affirm.