2010 WY 69

**WEST PARK HOSPITAL DISTRICT, In re Recommended Termination of Employment of Glenda R. Reynolds.**

Glenda R. Reynolds, Appellant (Petitioner),

v.

West Park Hospital District, Appellee (Respondent).

No. S–09–0201.

Supreme Court of Wyoming.

May 27, 2010.

Representing Appellant: G. Mark Garrison of Garrison & Krisjansons, P.C., Cody, Wyoming.

Representing Appellee: Chris Edwards of Simpson, Kepler & Edwards, LLC, The Cody, Wyoming Division of Burg Simpson Eldredge Hersh & Jardine, PC.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   Glenda Reynolds (Reynolds) appeals the West Park Hospital District's Board of Trustees' (Hospital District) decision to terminate her employment. Finding no error in the Hospital District's decision, we will affirm.

## ISSUES

[¶ 2]   Reynolds raises three issues on appeal. We have rephrased those issues as follows for clarity's sake:

1.   Was the Hospital District's decision to terminate Reynolds arbitrary, capricious, or contrary to law because it applied the wrong personnel handbook?

2.   Was the Hospital District's decision to terminate Reynolds arbitrary, capricious, or contrary to law because it followed a discipline procedure that did not exist in the handbook?

3.   Was the Hospital District's decision to terminate Reynolds a breach of its duty of good faith and fair dealing?

## FACTS

[¶ 3]   Reynolds began working for the Hospital District in 1984. On September 29, 2003, Reynolds entered into a Separation and Non–Disclosure Agreement (Agreement) with the Hospital District. By the terms of the Agreement, Reynolds voluntarily resigned her employment and released any claims she may have had against the Hospital District. The Agreement provided that Reynolds' resignation would be retroactive, effective at the close of business on September 24, 2003. In consideration for Reynolds' resignation and waiver of potential claims, the Hospital District paid Reynolds twelve weeks pay and continued providing her with health coverage. At about the same time, however, a different position was found for Reynolds, and she returned to work for the Hospital District.

[¶ 4]   In 2002, the Hospital District had adopted a new employee handbook which generally provided that employees hired after January 1, 2002, would be "at-will" employees and could be terminated for any reason or no reason. The 2002 handbook also provided a step discipline procedure that applied to "for cause" employees who had been hired prior to 2002. The adoption of the 2002 handbook will be discussed further below.

[¶ 5]   After Reynolds began her new position in 2003, there were several incidents wherein she received some form of discipline. The discipline occurred primarily as a result of Reynolds falling asleep during her work shift, beginning in June of 2003.[1]   There were seven documented occurrences of Reynolds falling asleep during her shift. Following each incident, the Hospital District disciplined Reynolds by verbally warning her that she must remain awake during her shift and that such conduct could result in her being terminated, providing her with written warnings relating to the offenses, suspending her on one occasion, and having an employee conference with her. Reynolds was also ver-

---

1.   The other instances in which Reynolds was caught sleeping during her shift were December 18 and 20, 2004, July 1 and 15, 2005, April 30, 2007, and August 27, 2007.

bally warned on August 14, 2007, about having excessive absences from work. On September 13, 2007, following the seventh time that Reynolds was found sleeping on the job, she received notification that the Chief Executive Officer for the Hospital District and the Cedar Mountain Center Director recommended to the Hospital District that her employment be terminated. Reynolds requested, and was granted, a hearing on the termination recommendation before the Hospital District. Following the hearing, the Hospital District accepted the termination recommendation and entered an order to that effect. Reynolds timely filed an appeal to the district court. The district court affirmed the Hospital District's decision. This appeal by Reynolds followed.

## STANDARD OF REVIEW

[¶ 6] The Hospital District is a Wyoming Governmental Entity organized pursuant to Wyo. Stat. Ann. §§ 35–2–401 through 35–2–404 (LexisNexis 2009). The Hospital District is an "agency" as defined by Wyo. Stat. Ann. § 16–3–101(b)(i) (LexisNexis 2009). Accordingly, we will review the Hospital District's decision to terminate Reynolds as we would any other agency's decision.

"When we consider an appeal from a district court's review of an administrative agency's decision, we give no special deference to the district court's decision." *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). We review the case as though it had come directly from the administrative agency. *Id.* We review an administrative agency's decision pursuant to the Wyoming Administrative Procedure Act, which provides in pertinent part that the reviewing court shall:

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c)(ii) (LexisNexis 2009). We affirm an agency's findings of fact if they are supported by substantial evidence. *Dale,* ¶ 22, 188 P.3d at 561. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Id.,* ¶ 11, 188 P.3d at 558, quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo.2002), quoting *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, 1136 (Wyo.2001). We review an agency's conclusions of law *de novo. Dale,* ¶ 26, 188 P.3d at 561. We employ the arbitrary and capricious standard as a "safety net" against agency action that is contrary to law but not readily correctible under the other applicable standards of review. *See id.,* ¶¶ 23–24, 188 P.3d at 561.

*Shelest v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 3, ¶ 7, 222 P.3d 167, 169–70 (Wyo.2010).[2]

## DISCUSSION

*Was the Hospital District's decision to terminate Reynolds arbitrary, capricious, or contrary to law because it applied the wrong personnel handbook?*

[¶ 7] Reynolds argues that the Hospital District's decision to terminate her was arbitrary and capricious because it followed the procedures for termination and discipline

---

**2.** Reynolds has presented her issues primarily under the arbitrary and capricious standard of review, so that is how they will be considered.

outlined in the 2002 handbook, rather than the handbook and policies in place when Reynolds was first hired by the Hospital District in 1984. Specifically, Reynolds argues that when she was hired in 1984, the handbook in place at that time governed her employment, and continued to do so until her termination in 2007. She claims this is so because she was never paid additional consideration to modify her employment contract whereby the 2002 handbook would control.

[¶ 8] Reynolds' argument fails for two reasons. First, Reynolds entered into an agreement with the Hospital District in 2003, wherein she voluntarily resigned her employment and released any claims that she may have had against the Hospital District in relation to that employment. The Agreement states in part as follows:

. . . .

1. *Termination of Employment.* Employee resigns effective at the close of business September 24, 2003. Employee acknowledges that his/her decision to resign was free, voluntary, and not the result of coercion, influence, or pressure by [the Hospital District].

2. *Consideration.* As consideration for the commitments contained in this Agreement, [the Hospital District] agrees to provide the following consideration to the Employee, provided Employee does not revoke this Agreement within the revocation period described in paragraph no. 6 and 17 below:

[The Hospital District] shall continue to pay Employee her current base rate of pay times forty hours a week for a period of twelve (12) weeks. Employee will receive compensation for twelve weeks commencing September 24, 2003 to be paid on the regularly scheduled paydays until paid in full. . . . Employee shall not be required to perform any duties for [the Hospital District] or come to [the Hospital District].

a. . . . [the Hospital District] agrees to pay COBRA health insurance coverage for the employee for a period of three months, commencing November 3, 2003 and terminating January 31, 2004.

. . . .

4. *Release of Claims.* In exchange for the payments and commitments provided above, to which Employee is otherwise not entitled, and in consideration of the foregoing, Employee, on behalf of herself, her heirs, executors, administrators, personal representatives, and assigns, without any reservations whatsoever, forever releases and waives any claim or liability under the laws of the United States or other foreign jurisdiction, whether presently asserted or otherwise, and whether known or unknown, against [the Hospital District] arising out of, prior to, or in any way related to her employment with [the Hospital District], or any acts or omissions of [the Hospital District] occurring on or before the date this Agreement is signed and executed by Employee. This release and waiver includes, but is not limited to, the following:

. . . .

b. Any other claims arising under any federal, state, provincial or local constitution provision, statute, regulation or common law or equity, including, but not limited to, claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, retaliatory discharge, violation of public policy, intentional infliction of emotional distress, defamation, libel, slander, violation of any civil right, or any other claim arising in tort, contract or equity;

c. Any claims of right or entitlement arising under any [Hospital District] rule, bylaw, policy, procedure or course of dealing;

. . . .

[¶ 9] In her brief, Reynolds claims that it is "uncontroverted" that no consideration was ever paid to her to accept the 2002 handbook and thus the 2002 handbook did not govern her employment. However,

Reynolds admitted during her testimony at the Hospital District hearing that she did receive twelve weeks pay and medical insurance. By signing the Agreement and being paid consideration in return, Reynolds not only resigned effective September 24, 2003, but she also waived any rights she may have had under the 1984 handbook. When Reynolds was then rehired for a new position, which she began in 2003, her new employment date was 2003, making her employment subject to the 2002 handbook. Reynolds argues that she never quit working for the Hospital District, she only switched positions in 2003, and thus she maintained continuous employment from the time she was hired in 1984 until the time she was terminated in 2007. However, it is clear by the language of the Agreement that the intent was that her employment with the Hospital District was to be deemed terminated as of September 24, 2003. This is evidenced by the fact that the Agreement does not state that Reynolds was resigning from a particular position, but rather, it refers to her resignation from the Hospital District generally.

[¶ 10] It is true that, when employment is governed by an employee handbook that provides that termination can only be for just cause, new consideration must be given to the employee in order to modify that relationship to at-will employment. *Brodie v. General Chemical Corp.,* 934 P.2d 1263, 1268 (Wyo.1997). That scenario does not fit the facts of this case. Here, Reynolds was paid consideration for her termination from employment, and for her release of potential claims. That ended her employment under the "old" personnel policies. Her new employment, beginning in 2003, was always under the 2002 personnel policies, and she had no right to further consideration for employment under those policies.

[¶ 11] Furthermore, Reynolds failed to obtain a copy of the alleged 1984 handbook through the discovery process, failed to present it to this Court or at any prior proceedings, and perhaps most significantly, failed to demonstrate that even if that handbook controlled her employment, the outcome of the case would have been different. Consequently, we find that the Hospital District did not act arbitrarily, capriciously, or contrary to law when it relied on the 2002 handbook to terminate Reynolds.

### Was the Hospital District's decision to terminate Reynolds arbitrary, capricious, or contrary to law because it followed a discipline procedure that did not exist in the handbook?

[¶ 12] Reynolds next argues that even if the 2002 handbook governed her employment, the Hospital District's decision to terminate her was arbitrary, capricious, or contrary to law because that handbook did not contain progressive discipline procedures applicable to her situation. We will not address the totality of Reynolds' arguments in regard to this issue because Reynolds was an at-will employee to whom a "step discipline" policy did not apply. As noted above, when Reynolds voluntarily resigned her employment in 2003, signed a release of claims, was paid consideration in return, and then began a new position, her new 2003 employment date made her employment subject to the 2002 handbook. Section 167 of the 2002 handbook states in pertinent part that

[a]ny employee of [the Hospital District], who begins work **after January 1, 2002,** may be terminated at any time for any reason, or for no reason. **No employee shall have any right or expectation of future employment,** unless they are a party to a written contract with [the Hospital District], which outlines other requirements for dismissal.

(Emphasis in original.) At the time of her termination in 2007, Reynolds was an at-will employee, without "any right or expectation of future employment," and the Hospital District could terminate her for any reason or no reason. Consequently, the Hospital District's decision to terminate Reynolds was not arbitrary, capricious, or contrary to law in that it did what the 2002 handbook permitted it to do.

### Was the Hospital District's decision to terminate Reynolds a breach of its duty of good faith and fair dealing?

[¶ 13] Reynolds' final argument is that, because she was provided discipline

short of termination on prior occasions, she had a reasonable expectation that the Hospital District would "continue[ ] discipline, short of termination" for the most recent offenses, and by terminating her instead, the Hospital District breached its duty of good faith and fair dealing. Reynolds does not cite any case law in support of this theory, and we have held that "[t]he existence of a contractual implied covenant [of good faith and fair dealing] is obviously incompatible with the at-will presumption and is not applicable in those situations." *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 23, 18 P.3d 645, 655 (Wyo.2001). In the absence of any further development of Reynolds' position in this regard, we will affirm the action of the Hospital District.[3]

## CONCLUSION

[¶ 14] Reynolds' resignation and release of claims in 2003 terminated any rights she may have had under whatever employee handbook may have been in effect before that date. Furthermore, those rights cannot be determined because neither that handbook, nor its specific terms of employment, became part of the record. Reynolds' 2003 employment was at-will, under the applicable 2002 employee handbook, and her rights thereunder were not violated when she was terminated in 2007. Reynolds has not shown the conduct of the Hospital District to have been arbitrary, capricious, or contrary to law, and she has not shown such conduct to have violated a covenant of good faith and fair dealing.

[¶ 15] Affirmed.

---

**3.** Reynolds' brief is not clear as to whether she intended to raise breach of the duty of good faith and fair dealing as a contract claim or a tort claim. The result would be the same under either theory. *See Metz v. Laramie County Sch. Dist. No. 1*, 2007 WY 166, ¶ 63, 173 P.3d 334, 350 (Wyo.2007).