# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 103

APRIL TERM, A.D. 2022

August 24, 2022

CITY OF RAWLINS,

Appellant
(Respondent),

v.

S-21-0278

STEPHANIE SCHOFIELD,

Appellee
(Petitioner).

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
Bradley T. Cave, Holland & Hart LLP, Cheyenne, Wyoming. Argument by Mr. Cave.

*Representing Appellee:*
Robert C. Jarosh and Erin E. Berry, Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Ms. Berry.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]   Stephanie Schofield challenged her termination from the City of Rawlins Fire Department (Fire Department).  The district court determined that the procedures leading to her dismissal violated Ms. Schofield's right to due process and reversed the Rawlins Fire Department Civil Service Commission's (Commission) decision terminating her employment.  The district court ordered Ms. Schofield be reinstated with back pay.  We find the contested case hearing afforded Ms. Schofield due process, and the Commission's decision was supported by substantial evidence in accordance with law.  We reverse the district court and affirm the decision of the Commission.

*ISSUES*

[¶2]   The issues are:

> 1.   Was Ms. Schofield afforded due process prior to her discharge by the Commission?
>
> 2.   Was the Commission's decision supported by substantial evidence and not arbitrary or capricious?

*FACTS*

[¶3]   Ms. Schofield joined the Rawlins Fire Department as a volunteer in 2007, became a paid staff member in 2010, and was promoted to shift captain in 2016.  In the early morning hours of May 16, 2020, 911 dispatcher Karigan Gates received a call from citizen DM seeking a "lift assist."  Ms. Gates was familiar with DM as she had spoken with her more than fifty times in her capacity as a dispatcher.  DM is in a wheelchair and occasionally has difficulty speaking but given time, can communicate.  On receiving DM's call, Ms. Gates called Fire Station One to initiate a response to DM's request.  Ms. Schofield, who was nearing the end of a twenty-four-hour shift and had been asleep for several hours, took the call.[1]  After Ms. Gates relayed the information, Ms. Schofield replied, "F***in [DM], G*d d*mn it."  Ms. Schofield and Fire Engineer Paul Hardy then drove to DM's home.  There, they discovered that the control stick of DM's wheelchair had gotten stuck underneath her kitchen countertop.  After freeing her, they returned to the station.

[¶4]   Three days later, on May 19, 2020, Ms. Gates received another late night 911 call from DM asking for a lift assist.  Ms. Gates called Fire Station One and Ms. Schofield, asleep at the end of her shift, answered the call.  On learning that the call for assistance was

---

[1] Shifts begin at 7:00 a.m. and end at 7:00 a.m. the next morning.  The Fire Department expects employees will sleep during the twenty-four-hour shift.

1

from DM, Ms. Schofield said, "f***in [DM]." "I'm going to kick her a**." Ms. Gates, feeling uncomfortable but not believing Ms. Schofield was intending to act on her comments, laughed. When Ms. Schofield and Fire Engineer Hardy arrived at DM's residence, they found her in her wheelchair in the bedroom. The impetus for her 911 call was that her catheter had disconnected. After reconnecting the catheter and returning to the station, Ms. Schofield called Ms. Gates. She explained the reason behind DM's call and told Ms. Gates that she scolded DM. Ms. Schofield disclosed that she told DM, "this isn't what we do. . . . You need to call your parents . . . ." "[W]e're coming here thinking that this is an emergency." "This isn't an emergency." "You can't [tell us] lift assist when it's not [an emergency]." Ms. Schofield told Ms. Gates that she thought she had made DM "feel bad" and "she may complain." Fire Engineer Hardy testified he was "surprised" because "[he] didn't think [Ms.] Schofield would have talked to citizen DM that way."

[¶5]    Ms. Gates did not report the calls to her supervisor or anyone else. However, as a separate matter, she had emailed her supervisor requesting a recording of a call that had come in just after Ms. Gates' first call to Ms. Schofield.[2] In preparing to record that call, the supervisor heard the exchange between Ms. Gates and Ms. Schofield. The supervisor reported the call to the Rawlins chief of police. The next day, the Rawlins chief of police asked Battalion Chief Allen Robinson, Ms. Schofield's direct supervisor,[3] to stop by dispatch. When he arrived, the 911 supervisor played the May 19, 2020 recorded call between Ms. Gates and Ms. Schofield. Battalion Chief Robinson stated his "first reaction to it was shock. I couldn't believe what I was hearing. The tone of voice and everything involved with the call was just out of normal." He asked for a transcript of the call which he read before returning to the station. On his return, he reread the transcript of the call, and then emailed the City of Rawlins (the City) interim city manager, Dustin Ziebold, to request a meeting.

[¶6]    The next day, he met with Mr. Ziebold and played the May 19, 2020 recording. Mr. Ziebold asked Battalion Chief Robinson to procure recordings and transcripts of the May 16 dispatch call regarding DM, the May 19 dispatch call, and the May 19 follow-up call from Ms. Schofield to Ms. Gates. Mr. Ziebold reviewed the transcripts of the dispatch calls to Ms. Schofield and the transcript of the follow-up call from Ms. Schofield to Ms. Gates. He examined Ms. Schofield's disciplinary record as well. According to Mr. Ziebold, "in the end, the audio of the call was the pertinent piece of information, the tone, the tone that was used in that call." After several meetings between Battalion Chief

---

[2] The 911 dispatcher is responsible for patching in calls between police officers seeking a search warrant and a judge who must decide whether to grant a warrant after hearing officer testimony under oath. Dispatch makes a recording of any such call for court records.

[3] Under normal circumstances Ms. Schofield would report to the fire chief. However, because Ms. Schofield and Fire Chief Rutherford were in a personal relationship, Ms. Schofield reported directly to Battalion Chief Robinson. Battalion Chief Robinson supervised Ms. Schofield and in that capacity reported to the interim city manager, Dustin Ziebold.

Robinson and Mr. Ziebold, Battalion Chief Robinson recommended that the appropriate disciplinary action should be termination. Mr. Ziebold agreed.

[¶7] No one discussed the situation with Ms. Schofield until May 27, 2020. On that day while she was working her shift, Battalion Chief Robinson told her they needed to go for a ride. He provided no explanation. He drove Ms. Schofield to City Hall and a few minutes after they arrived, the city clerk escorted them to Mr. Ziebold's office.[4] Mr. Ziebold gave Ms. Schofield three documents—a transcript of the May 19 dispatch call, a resignation letter, and a termination letter. He asked her to read the transcript. When she finished, he told her, "the conduct on the call will not be tolerated." Mr. Ziebold informed Ms. Schofield that she could resign at once or her employment would be terminated immediately. The termination letter stated:

> Dear Ms. Schofield:
>
> This notice is given pursuant to 12.1 of the Rawlins Fire Department Civil Service Rules. You are hereby notified that your employment with the City of Rawlins is immediately terminated. This termination has been recommended by the Battalion Chief after completion of an investigation alleging that you made a verbal threat against an individual requesting assistance for help. This conduct is a violation of both city policy and the Rawlins Fire Department Civil Service Rules. This notice with specifications has been filed with the City of Rawlins Fire Civil Service Commission, please be further advised that any answer and demand for a hearing shall be pursuant to 12.2 of the Rawlins Fire Department Civil Service Rules.

[¶8] Ms. Schofield refused to sign the resignation letter and was terminated. She requested a hearing. She was instructed on how to file a hearing request with the Commission and did so the same day. On June 5, 2020, Ms. Schofield's counsel sent a letter to the Commission requesting that Ms. Schofield be "reinstated immediately to her previous position with the City of Rawlins, and provided full back pay[.]" Ms. Schofield's counsel asserted that her termination was illegal and contrary to Wyo. Stat. Ann. § 15-5-112(b) ("no person may be discharged or reduced in pay or rank without consent of the commission after a hearing"). Counsel maintained the action was likewise contrary to the Commission's Rule 12.2 which similarly requires the decision for termination or reduction in pay be made by the Commission and then enforced by the city manager.

---

[4] Just prior to the meeting with Ms. Schofield, Mr. Ziebold met with Fire Chief Rutherford to let him know of Ms. Schofield's imminent termination.

[¶9] On June 8, 2020, Mr. Ziebold wrote to the Commission and Ms. Schofield. In the letter, he recognized the validity of the points made by Ms. Schofield's counsel on the limits of his authority, and he reinstated Ms. Schofield with back pay. The letter formally requested that the Commission consider dismissal of Ms. Schofield and conduct an investigation and hearing. The letter identified Ms. Schofield's misconduct during the dispatch calls as the basis for the termination request. It also listed the Commission and personnel rules Ms. Schofield was alleged to have violated and raised an additional basis for termination which had not been previously raised or made known to Ms. Schofield— two past disciplinary actions "pertinent to whether Ms. Schofield should be discharged for cause to promote the efficiency of the service[.]" The two prior disciplinary actions were described as follows:

> May 8, 2017 official letter of reprimand and suspension without pay for participating in a training exercise and operating fire department equipment under the influence of alcohol.

> February 26, 2018 formal letter of reprimand for insubordination.

**Investigation, Hearing, and Determination by the Commission**

[¶10] On June 11, 2020, the Commission appointed a hearing officer and directed him to investigate the allegations with the investigation to include a contested case hearing pursuant to Commission Rule 12.2. On June 19, 2020, the hearing officer issued a Notice of Investigation, after which the "Commission . . . shall determine whether the reason for discharge is sufficient and established." Ms. Schofield requested that the matter go directly to a hearing. The Amended Notice of Hearing ordered each party to serve a Disclosure Statement by July 29, 2020, identifying the issues, witnesses, and exhibits the parties may wish to present at the hearing. The final prehearing conference was set for August 5, 2020, and the hearing was scheduled for August 12, 2020.

[¶11] Prior to the August 12, 2020 hearing, both parties filed motions in limine. The City's motion identified evidence which it claimed should be excluded as "irrelevant, immaterial or unduly repetitious" including testimony regarding Ms. Schofield's assertion that she was subjected to gender bias by male firefighters (she did not explicitly identify any responsible individual); allegations that Battalion Chief Robinson is generally biased against women; and evidence of other firefighters who publicly used profanity and were not disciplined. The City contended the gender bias evidence was irrelevant unless Ms. Schofield identified which firefighters made the alleged remarks or how the remarks (made years ago) were related to her proposed discharge. It maintained that discipline or lack of discipline for other firefighters who had used profanity was irrelevant unless Ms. Schofield

4

could establish those "situations [were] very similar to the conduct" leading to her proposed discharge.

[¶12] Ms. Schofield's motion in limine requested the exclusion of evidence related to her prior discipline and the exclusion of a July 24, 2020 call from DM to the 911 dispatcher. On July 24, DM called 911 for assistance and during the call asked the dispatcher not to send the "mean lady" from the Fire Department. In support of her motion, Ms. Schofield asserted the prior discipline was irrelevant as she was told her discharge was based solely on the May 19, 2020 dispatch call and events related to it. She objected to the relevance of the July 24 call because it occurred after the City filed its request to discharge Ms. Schofield.

[¶13] The hearing examiner entered an Order on Motions in Limine. It excluded evidence of any co-worker misconduct (use of profanity) as irrelevant unless Ms. Schofield could demonstrate the conduct was very similar to the conduct at issue in this case. The hearing examiner excluded evidence of general gender bias in the Fire Department as irrelevant but allowed evidence of Battalion Chief Robinson's gender bias, finding such evidence regarding a supervisor relevant. The hearing examiner allowed evidence of prior disciplinary incidents, concluding they were relevant because Ms. Schofield intended to rely on her employment record to demonstrate her value to the Fire Department. The hearing examiner also allowed evidence of the July 24, 2020 call from DM reasoning the request from a disabled citizen that a member of the Fire Department not be dispatched to her house because of prior treatment was relevant to whether Ms. Schofield's conduct harmed the efficiency of the Fire Department.

[¶14] At the hearing, the parties fully litigated the facts surrounding the City's request that Ms. Schofield's employment be terminated. The City called four witnesses—Ms. Gates, Battalion Chief Robinson, Mr. Ziebold, and Fire Engineer Hardy. Ms. Schofield testified and called interim Fire Department shift captain David Gier, and Fire Chief Rutherford to testify on her behalf. The hearing officer admitted forty-five exhibits into evidence. At the close of evidence, the parties submitted written closing arguments, proposed orders, and objections. The hearing officer then submitted its findings and a proposed order to the Commission. On November 23, 2020, the Commission issued its Findings of Fact, Conclusions of Law and Order terminating Ms. Schofield.

[¶15] The Commission found that Ms. Schofield's conduct on May 19, 2020, violated Civil Service Commission Rules, § 21.3 (Professional Responsibilities) and § 21.7 (Required Conduct). It determined her conduct:

> was discourteous and tactless; contrary to the expectation of exercising the utmost patience and discretion; demonstrated a substantial bias and anger against a citizen; was inconsistent with the duty of advancing cooperative relationships with the

5

public; and constituted belligerent and threatening behavior, regardless of her intent. Her leadership position as a shift captain adds weight to the significance of her infractions.

[¶16] The Commission explicitly rejected Ms. Schofield's argument that she was denied due process. It found, because no action was final until the Commission made its decision, the complete investigation and the contested case hearing met her due process pretermination rights. The Commission then considered whether Ms. Schofield's actions established cause for termination. It set aside her argument that she was merely expressing frustration about the Fire Department's handling of calls from this citizen and that she never intended to harm DM. The Commission concluded the call established that her words were not an "offhand dismissive remark, a jest, or motivated merely by frustration." She was angry and aggressive. In addition, the Commission found the evidence demonstrated that her "anger influenced how she provided service to Citizen DM on May 19, 2020[,] with ramifications for how Citizen DM now views the service provided by the Rawlins Fire Department." It concluded these events established a "clear nexus between her conduct and her ability and fitness to perform her position, and the efficiency of the service provided by the Rawlins Fire Department."

[¶17] The Commission considered her "long record of employment with the Rawlins Fire Department, and [her] many notable achievements" which would "weigh against a finding that [Ms. Schofield's] discharge [would] promote the efficiency of the service." Even so, the Commission determined that her achievements were outweighed by her actions while holding a leadership position in the Fire Department. The Commission cited Civil Service Commission Rule, § 21.1, "the reputation of the organization is fundamentally dependent upon the personal conduct and professional competence of its individual firefighters."

[¶18] After "[c]onsidering all of the evidence in the record," the Commission concluded "the reason for discharge is sufficient and established" pursuant to Wyo. Stat. Ann. § 15-5-112(b). It ordered Ms. Schofield's employment be terminated and the decision certified to the city manager "who shall enforce said decision."

**Appeal to the District Court**

[¶19] Ms. Schofield filed an appeal to the district court for review of the Commission's decision. The district court identified two issues: "1. Whether the Commission's decision was arbitrary and capricious[; and] 2. Whether the Commission's decision after a contested case hearing was supported by substantial evidence." The district court did not reach these issues and did not address the Commission's holdings. It determined that "Ms. Schofield sustained significant pre-deprivation due process violations throughout the entirety of the proceedings." The violation of due process began on "May 27, 2020, when she was impermissibly terminated." The district court stated, "an isolated statement made out of frustration in which the context and circumstances were not investigated falls far short of

6

meeting any 'for cause' basis for termination." The district court found that on May 27, 2020, Battalion Chief Robinson and Mr. Ziebold failed to consider relevant facts which led to the "unreasonable conclusion that Ms. Schofield made a 'threat of violence' that warranted termination[.]" The district court found Ms. Schofield's due process rights were violated again on June 8, 2020, because until that time the Fire Department had not asserted that her prior disciplinary record and the May 16 dispatch call were pertinent to the decision to terminate her employment. The district court determined these due process violations were sufficient to reverse the Commission's decision without considering the contested case hearing or whether substantial evidence existed for the Commission to affirm the City's recommendation for termination.

## STANDARD OF REVIEW

[¶20] As stated in *Lietz*:

> When we consider an appeal from a district court's review of an administrative agency's decision, we are not bound by the conclusions of the district court. *Reynolds v. West Park Hosp. Dist.*, 2010 WY 69, ¶ 6, 231 P.3d 1275, 1277 (Wyo. 2010); *Guier v. Teton Cty. Hosp. Dist.*, 2011 WY 31, ¶¶ 12–13, 248 P.3d 623, 629–30 (Wyo. 2011). We consider the case "as if it came to us directly from the agency." *State ex rel. Wyoming Workers' Comp. Div. v. Brewbaker*, 972 P.2d 962, 964 (Wyo. 1999). We defer to the agency's findings of fact, and we affirm those findings if they are supported by substantial evidence. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008); *Dep't of Revenue & Taxation of State of Wyo. v. Casper Legion Baseball Club, Inc.*, 767 P.2d 608 (Wyo. 1989).

*Lietz v. State ex rel. Dep't of Fam. Servs.*, 2018 WY 127, ¶ 10, 430 P.3d 310, 313–14 (Wyo. 2018). We do not, however, defer to an agency's conclusions of law. "Instead, if the 'correct rule of law has not been invoked and correctly applied, . . . the agency's errors are to be corrected.'" *State, Dep't of Revenue v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 2019 WY 7, ¶ 7, 432 P.3d 920, 922 (Wyo. 2019) (citations omitted). "The question of whether an individual was afforded constitutional due process is one of law, which we review de novo." *Matter of NRAE*, 2020 WY 121, ¶ 12, 472 P.3d 374, 377 (Wyo. 2020) (citations omitted).

[¶21] The Wyoming Administrative Procedure Act governs our review:

> (c)     To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant

questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c)(ii)(A), (E) (LexisNexis 2021); *Flauding v. State ex rel. Wyoming Dep't of Transp.*, 2021 WY 131, ¶ 18, 499 P.3d 272, 276 (Wyo. 2021).

When the parties submit evidence at a contested case hearing, we start by applying the substantial evidence standard of review to fact findings. However, even if the record "contains sufficient evidence to support the administrative decision under the substantial evidence test," we still apply "the arbitrary-and-capricious standard as a 'safety net' to catch other agency action that may have violated the Wyoming Administrative Procedures Act." We review "conclusions of law de novo and affirm only if [they] are in accordance with the law."

*Union Tel. Co. v. Wyoming Pub. Serv. Comm'n*, 2022 WY 55, ¶ 33, 508 P.3d 1078, 1090–91 (Wyo. 2022) (citations omitted).

The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it. The

arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision.

*Reichenberg* [*v. State ex. rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 36,] ¶ 29, 506 P.3d [732, 742 (Wyo. 2022)] (quoting *Matter of Worker's Comp. Claim of Vinson*, 2020 WY 126, ¶ 27, 473 P.3d 299, 309 (Wyo. 2020)). This standard "is not meant to apply to true evidentiary questions." *Id.* (quoting *McIntosh v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 135, ¶ 31, 311 P.3d 608, 616 (Wyo. 2013)). It instead applies "when, for example, the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Id.* (quoting *McIntosh*, ¶ 31, 311 P.3d at 616).

*Union Tel. Co.*, ¶ 48, 508 P.3d at 1093–94.

### *DISCUSSION*

### I. *Ms. Schofield was afforded due process prior to her discharge by the Commission.*

[¶22]  The Due Process Clause provides, "nor shall any State deprive any person of life, liberty, or property, *without due process of law*[.]" U.S. Const. amend. XIV, § 1 (emphasis added). "The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness." *Hanft v. City of Laramie*, 2021 WY 52, ¶ 45, 485 P.3d 369, 384 (Wyo. 2021) (quoting *Brush v. Davis*, 2013 WY 161, ¶ 16, 315 P.3d 648, 653 (Wyo. 2013)). The parties do not dispute that Ms. Schofield has a protected property interest in her continued employment.

[¶23]  Ms. Schofield maintains the district court correctly ruled that she was not afforded pretermination due process *prior to the contested case hearing* because her de facto date of discharge was either on May 27 or, at the latest, June 8, 2020. The City asserts the district court erred because Ms. Schofield's erroneous termination was rescinded prior to the contested case hearing, and therefore, the contested case hearing satisfied Ms. Schofield's pretermination due process rights.

[¶24]  In Wyoming, "to have 'good cause' to terminate employment, the employer's decision must be 'supported by substantial evidence gathered through an *adequate*

*investigation that includes* notice of the claimed misconduct and a chance for the employee to respond.'" *Lietz*, ¶ 25, 430 P.3d at 319 (quoting *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 948 P.2d 412, 422 (Cal. 1998)). "[I]nvestigative fairness in this context contemplates that the employer act in good faith and fairly listen to both sides, for that is a duty lying upon [everyone] who decides anything." *Id.* (citation and quotation marks omitted). Because the due process required in pretermination and post-termination may differ, we begin by determining when Ms. Schofield's employment was finally terminated.

[¶25] The time at which Ms. Schofield's employment was permanently terminated is controlled by statute. Retention and discharge provisions are found in Wyo. Stat. Ann. § 15-5-112 which provides:

> (a)     All persons occupying positions affected by this article may retain their positions until discharged or reduced in grade under its provisions.
>
> (b)     Discharge from a department, or reduction in grade or compensation, or both, may be made for any cause, not political or religious, which will promote the efficiency of the service, on written notice and specifications filed with the commission and served upon the person affected by the authority requesting the discharge or reduction. The person whose discharge or reduction is sought is allowed a reasonable time to answer the charges in writing and demand a hearing. The commission, after hearing or investigation, shall determine whether the reason for discharge or reduction is sufficient and established. Except as otherwise provided in subsection (c) of this section **no person may be discharged or reduced in pay or rank without consent of the commission after a hearing**, unless the action is pursuant to a classification program under W.S. 15-5-106. A copy of the specifications, notice, answer, consent and order of discharge or reduction are a part of the public records of the commission.

Wyo. Stat. Ann. § 15-5-112(a), (b) (LexisNexis 2021) (emphasis added).

[¶26] The City argues that Ms. Schofield was not terminated until November 23, 2020, when the Commission as the decision maker for the City entered its Findings of Fact, Conclusions of Law and Order. In *Vance v. City of Laramie*, we clarified the roles of a city and a fire commission when deciding to terminate a firefighter's employment. In that case, Mr. Vance, a firefighter, was discharged after failing a random alcohol test. After a contested case hearing, the civil service commission determined that termination was not an appropriate remedy and revised Mr. Vance's disciplinary action to a suspension for a

10

period of time. The city and Mr. Vance petitioned the district court for review and the district court reversed, concluding the civil service commission had applied the wrong legal standard and remanded the matter. On remand, the civil service commission considered the same evidentiary record and ruled in favor of Mr. Vance, finding that the breathalyzer tests were invalid. The city petitioned the district court for review, and it again reversed and remanded. Considering the matter for the third time, the civil service commission consented to Mr. Vance's discharge. After the district court dismissed Mr. Vance's petition for review, Mr. Vance appealed to this Court. We requested additional briefing on whether the district court had jurisdiction to consider the city's earlier petitions for review of the civil service commission decisions. *Vance v. City of Laramie*, 2016 WY 106, ¶¶ 1–3, 382 P.3d 1104, 1105 (Wyo. 2016).

[¶27] To answer this question, in *Vance* we examined the "structure and objectives of the civil service statutory scheme and the nature of the administrative action." *Id.* ¶ 27, 382 P.3d at 1111. After review of Wyo. Stat. Ann. § 15-5-112(b), we concluded that "[t]he civil service statutory scheme shows that the legislature intended for the commission to exercise the city's responsibilities for police and fire department employment decisions." *Id.* ¶ 30, 382 P.3d at 1111. We found it "telling that, in § 15-5-112(b), the legislature referred to the city's notice of discharge as a 'request'; directed that no employee discharge or reduction in grade or compensation can become final without commission 'consent'; and gave the commission power to investigate and hold hearings on the disciplinary matters." *Id.* We stated:

> The statutory scheme demonstrates that the commission is not an independent agency that reviews the city's final employment decision; instead, it plays an integral role in making employment decisions. **The commission is, in all respects, the final decision maker for the city on department employment matters. The commission's action is, in effect, the city's action. In other words, the commission is acting for the city itself.**

*Id.* ¶ 31, 382 P.3d at 1111 (emphasis added).

[¶28] Ms. Schofield asserts the City's reliance on *Vance* overextends its holding. Instead, she maintains our holding in *Lietz*, ¶¶ 3–41, 430 P.3d at 312–23 applies and that her actual termination occurred on May 27, 2020, when Mr. Ziebold gave her the discharge letter. In *Lietz*, an investigation into Ms. Lietz's cause for discharge was concluded without speaking with Ms. Lietz before she was dismissed. *Id.* ¶¶ 6–7, 430 P.3d at 313. We held an adequate investigation required giving Ms. Lietz an opportunity to respond and that the Office of Administrative Hearings (OAH) correctly determined that the Department of Family Services had not afforded Ms. Lietz an adequate investigation before discharging her employment. We relied on *Life Care Ctrs. of Am., Inc. v. Dexter*, 2003 WY 38, 65 P.3d

11

385 (Wyo. 2003), where we set forth the framework for evaluating cause in the employment context. *Lietz*, ¶ 16, 430 P.3d at 316. We adopted the good faith standard for determining cause in employment termination decisions and explained:

> [U]nder this standard, the question to be resolved by the fact finder is not, "Did the employee *in fact* commit the act leading to dismissal?" Rather, it is, "Was the factual basis on which the employer concluded a dischargeable act had been committed reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual?" "Cause" is defined under this standard as
>
> > fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual. A reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond.

*Id.* ¶ 17, 430 P.3d at 316 (citations omitted). We affirmed the OAH reversal of her dismissal.

[¶29] Ms. Schofield relies on *Lietz* in support of her argument that the City did not afford her an adequate investigation prior to May 27, 2020. We agree that the City's initial attempt to discharge Ms. Schofield was invalid and void. *Bd. of Trs. of Laramie Cnty. v. Bd. of Cnty. Comm'rs of Laramie Cnty.*, 2020 WY 41, ¶ 20, 460 P.3d 251, 260 (Wyo. 2020) ("Commissioners lacked authority to dissolve the Fair Board, and their Resolution is void."); *Henning v. City of Casper*, 50 Wyo. 1, 57 P.2d 1264, 1267 (1936) ("neither the city of Casper nor the officers thereof had any power or authority . . . to levy assessments for said sewer construction or to issue bonds or to sell the same in payment therefor, and that the said bonds and the aforesaid assessments were and are and each of them was and is illegal and void, under the laws of the state of Wyoming"). If the City had not rescinded its May 27, 2020 termination of Ms. Schofield, its decision would be reversed, and she would be reinstated with back pay.

[¶30] The governing statutes and facts surrounding Ms. Schofield's dismissal distinguish this case from *Lietz*. Here, the Commission was not reviewing Ms. Schofield's prior discharge. It was determining whether she should be discharged in the first place. Unlike *Lietz*, the City rescinded its improper May 27 discharge and reinstated Ms. Schofield with back pay. The City's June 8 letter to the Commission and Ms. Schofield set forth the reasons for its discharge recommendation in full. It afforded Ms. Schofield proper notice

of its recommendation. Ms. Schofield cannot rely on the rescinded May 27 dismissal to support her due process argument.

[¶31] Ms. Schofield maintains that the initial mistakes by Battalion Chief Robinson and Mr. Ziebold cannot be undone. She argues that the contested case hearing cannot substitute for an informal hearing with her supervisors where the Rules of Evidence do not apply. She maintains that "a full and fair" "opportunity to be heard" required an opportunity for her to offer any and all evidence in her defense to Mr. Ziebold prior to other pretermination procedures. She claims, because the hearing examiner excluded evidence related to her claim of a general gender bias in the Fire Department, the contested case hearing was insufficient to satisfy due process.[5]

[¶32] She cites to our decision in *Town of Evansville Police Dep't v. Porter*. In that case, when the town of Evansville terminated Mr. Porter, it failed to comply with the express provisions of its employee handbook which required:

> (a) notice of termination in writing, (b) notice of the right to request an informal hearing before the appointing authority prior to the effective date of termination, (c) if requested, an informal hearing to be attended by the employee and department head for a determination whether there is reasonable cause of termination, (d) a tape recorded record of the informal hearing, and (e) documentation of the reasons for termination.

*Town of Evansville Police Dep't v. Porter*, 2011 WY 86, ¶ 11, 256 P.3d 476, 482 (Wyo. 2011). We explained:

> Where an employee is fired in violation of his due process rights, the availability of *post-termination* grievance procedures will not ordinarily cure the violation. Thus, even where a discharged employee receives a post-termination hearing to review adverse personnel action, the pre-termination hearing still needs to be extensive enough to guard against mistaken decisions, and accordingly, the employee is entitled to notice, an explanation of the employer's evidence, and an opportunity to present his side of the story. If an employee is fired without these pre-termination protections, normally the constitutional deprivation is then complete. Thus, the post-

---

[5] Ms. Schofield does not argue that the hearing examiner's decision to exclude the evidence was wrong. Rather, she contends the error lies in the fact she had a right to present this evidence *prior* to the contested case hearing.

termination grievance procedures which the individual defendants provided to [the employee] could not compensate for a lack of pre-termination process afforded [the employee].

*Id.* ¶ 19, 256 P.3d at 486 (emphasis added) (citations omitted) (quoting *Cotnoir v. Univ. of Maine Sys.*, 35 F.3d 6, 12–13 (1st Cir. 1994)).

[¶33] Ms. Schofield's reliance on *Porter* again reflects a misunderstanding of the posture of her case. Her May 27, 2020 termination was rescinded and she was reinstated with back pay. The stage was reset and the initial deprivation of pretermination procedures required under Wyo. Stat. Ann. § 15-5-112(b) was redressed. The process began anew when, on June 8, 2020, the City formally requested an investigation and hearing on the question of whether there was a basis for the termination of Ms. Schofield's employment. At Ms. Schofield's request, the matter went directly to a hearing where she was given the opportunity to fully respond to the reasons given for the requested termination. Her employment was not terminated until after the Commission issued its decision. To the extent Ms. Schofield relies on *Porter* to support her contention that she was entitled to an *informal* hearing unencumbered by the Rules of Evidence, she overextends its reach. Likewise, no such requirement is found in Wyo. Stat. Ann. § 15-5-112(b).

[¶34] Ms. Schofield relies on *Mondt v. Cheyenne Police Dep't*, 924 P.2d 70, 82 (Wyo. 1996) and *Sweetwater Cnty. Sch. Dist. No. One v. Goetz*, 2017 WY 91, ¶¶ 16–44, 399 P.3d 1231, 1234–40 (Wyo. 2017) in arguing that because constitutional due process requires the employer to provide informal pretermination procedures and the opportunity to respond, that a post-termination hearing is insufficient to correct the pretermination due process failures.

[¶35] As before, Ms. Schofield's argument is based on her erroneous belief that her discharge occurred on May 27, 2020. In *Mondt*, a policewoman was suspended with no pretermination process, and she was denied a post-termination hearing, even though the facts supporting her dismissal were disputed. In determining whether she had received due process prior to her suspension, we said:

> *If a full evidentiary hearing is not provided until **after** suspension*, the following risk-reducing procedures must be afforded before suspension: written notice of the charges against her, knowledge of the basis of those charges either by explanation or by reviewing the file containing the report of the internal affairs investigation conducted and, in the case of the denial of the allegations, an effective opportunity to respond either in person or in writing to an impartial decision maker.

14

*Mondt*, 924 P.2d at 82 (emphasis added) (citations omitted); *Goetz*, ¶ 35, 399 P.3d at 1238 (quoting *Mondt*, 924 P.2d at 82).

[¶36]  As to the necessity of a post-suspension hearing, we said:

> A Cheyenne police department employee who denies the charges made against her is also entitled to a post-suspension hearing.  [*Cleveland Bd. of Educ. v.*] *Loudermill*, 470 U.S. [532,] 547–48, 105 S.Ct. [1487, 1496, 84 L.Ed.2d 494 (1985)].  *Loudermill* requires a hearing which, at a minimum, determines whether reasonable grounds exist to believe that the charges against the employee are true and support the action.  *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495.  Wyoming's civil service statute provides for a contested case hearing in accordance with the Wyoming Administrative Procedures Act (APA).  Wyo. Stat. [Ann.] § 15-5-112(b) (1992); *Rolfes v. State ex rel. Burt*, 464 P.2d 531, 532 (Wyo. 1970).  Under Wyoming's APA, a contested case hearing entitles one to a full evidentiary hearing and examination of witnesses.  Conducted in this manner, a contested case hearing exceeds the constitutional requirements set out in *Loudermill*.

*Mondt*, 924 P.2d at 82.  Because Ms. Schofield was not discharged prior to the contested case hearing, neither *Mondt* nor *Goetz*[6] applies here.

[¶37]  Due process must be determined on the facts of the case.  *Goetz,* ¶ 38, 399 P.3d at 1238–39.  In this case, the June 8, 2020 letter provided Ms. Schofield notice of the City's

---

[6] In *Goetz*, addressing the discharge of a school employee, we recognized the holding in *Mondt* was correct for a police officer under the civil service rules in light of the absence of any due process whatsoever, but noted:

> A more general statement of the requirements for pretermination process can be found in *Davis v. City of Cheyenne*, 2004 WY 43, 88 P.3d 481 (Wyo. 2004):
>> [P]ublic employees must be given notice sufficient to afford them a reasonable opportunity to know the claims of the opposing party and meet them.  The notice must contain adequate and specific notice of the charges for which the employee is being terminated.  The notice must be sufficient to afford the employee a real and meaningful opportunity to respond to every charge or allegation brought against him as a basis for termination.  Absent an opportunity to respond to every allegation that is the basis for termination, a public employee has not been given a real and meaningful opportunity to be heard and is deprived of due process.

*Goetz*, ¶ 37, 399 P.3d at 1238 (quoting *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 17, 88 P.3d 481, 488 (Wyo. 2004)).

claims and the basis for those claims. The letter requested an investigation which Ms. Schofield affirmatively waived. "It is by now well established that 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. [D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* ¶ 31, 399 P.3d at 1237 (citations and quotation marks omitted).

[¶38] Ms. Schofield received notice and a meaningful opportunity to be heard *before* her discharge. In the process of the contested case hearing, she had the opportunity to conduct discovery, question the City's witnesses, and present her case. Following the Commission's final decision, Ms. Schofield was afforded judicial review in the district court. Ms. Schofield was not denied due process.

## II. *The Commission's decision was supported by substantial evidence and it was not arbitrary or capricious.*

[¶39] Ms. Schofield claims the Commission's decision that she made a verbal threat was not supported by substantial evidence and was arbitrary and capricious. She argues the Commission's conclusion that her discharge was in the best interest of the Fire Department misapplied the "for cause" standard and was contradicted by overwhelming evidence. In addition, she claims the Commission's failure to recognize that the City's reasons for requesting discharge were pretextual, and the exclusion of her evidence to refute the legitimacy of her disciplinary history were arbitrary and capricious. We start by applying the substantial evidence standard of review to the Commission's fact findings.

### A. Substantial Evidence

#### 1. Threat of Violence

[¶40] Ms. Schofield alleges the Commission's determination that she made a "threat of violence" was unsupported by the evidence. She does not dispute the accuracy of the dispatch recording but claims she had no intent to do violence. Because everyone who testified at the hearing stated that they did not believe Ms. Schofield intended to make good on her threat, she insists the Commission's conclusion that her statement was a threat of violence was objectively unreasonable.

[¶41] The evidence of Ms. Schofield's threat is contained in the first May 19, 2020 recording with dispatch. The Commission carefully considered, but rejected, her argument that her intentions mitigated her conduct:

> The Commission considers [Ms. Schofield's] intent and the circumstances under which her angry comments were made. Respondent contends that she never intended to

16

physically harm the citizen, and notes that she did not carry out any physically threatening behavior. The dispatcher testified that she did not believe Respondent was serious about the threat. Battalion Chief Robinson and [Mr.] Ziebold were not informed of her conduct until after the call, so both had knowledge that no physically threatening behavior had occurred. [Ms. Schofield] states [that] her conduct was an expression of frustration due to how the calls from this citizen are handled. [Ms. Schofield] suggests that these facts minimize the significance of her conduct and warrant some lesser disciplinary response.

We disagree that these arguments mitigate [Ms. Schofield's] conduct. We agree with Battalion Chief Robinson and [Mr.] Ziebold that anger and aggression animate [her] words as recorded . . . . Her words were not an offhand dismissive remark, a jest, or motivated merely by frustration regarding how this citizen's calls were handled.

.    .    .

The Commission concludes that it is more likely that Respondent made the angry threats because her sleep was interrupted by Citizen DM against whom she had a significant bias.[7] This motivation is entirely inconsistent with the duties and expectations of a Rawlins Fire Department employee, and particularly a shift captain.

[¶42] Ms. Schofield clearly made a threat to "kick [DM's] a**." A threat is "*an expression* of intention to inflict evil, injury, or damage." *Threat*, Merriam-Webster Dictionary (emphasis added), https://www.merriam-webster.com/dictionary/threat (last visited Aug. 23, 2022); *see also Threat*, Black's Law Dictionary (11th ed. 2019) ("A *communicated intent* to inflict harm or loss . . . ; a declaration, express or implied, of an intent to inflict loss or pain on another" (emphasis added)). No matter Ms. Schofield's actual intent, the Commission had substantial evidence that, in her anger, Ms. Schofield *expressed* the requisite intent. "If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal." *Mirich v. State ex rel. Bd. of Trs. of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 16, 481 P.3d 627, 632–33 (Wyo. 2021) (quoting *Exaro Energy III, LLC v. Wyoming Oil & Gas Conservation Comm'n*, 2020 WY 8, ¶ 10, 455 P.3d 1243,

_____

[7] Ms. Schofield did not take issue with the finding of bias in her brief to the district court, nor did she raise it before this Court.

17

1248 (Wyo. 2020)).  The Commission's determination that Ms. Schofield made the angry threats is reasonable and supported by substantial evidence.

## 2. Discharge Promotes the Efficiency of the Service

[¶43]  Ms. Schofield argues the Commission's conclusion that her discharge "promotes the efficiency of the service" is contradicted by the overwhelming weight of the evidence. She asserts the Commission's decision, therefore, is contrary to the requirement of "good cause" for termination.[8]

[¶44]  Ms. Schofield argues that "[o]ther than Mr. Ziebold, who testified that he knows little to nothing about the operations of the Fire Department, no one testified that Ms. Schofield's termination was in the best interests or promoted the efficiency of the Fire Department."  She points to Chief Rutherford's testimony that her termination left the Fire Department without a youth fire prevention program and caused the Fire Department to lose its most experienced fire investigator.  She also states interim shift captain Gier testified he has worked with Ms. Schofield for four years, and she is very much an asset especially because of her youth prevention work, her arson dog training, and her invaluable experience.

[¶45]  An analysis of good cause for termination requires that "the facts must bear reasonable relationship to the [employee's] fitness or capacity to perform his duties in that position."  *Bd. of Trs. of Lincoln Cnty. Sch. Dist. No. Two v. Earling*, 2022 WY 23, ¶¶ 28–29, 503 P.3d 629, 637 (Wyo. 2022) (citations and quotation marks omitted).  The Commission found Ms. Schofield violated the following Civil Service Commission Rules:

> **Section 21.3 Professional Responsibilities.**  All members of the department are a visible and readily-accessible representative of local government.  They respond to calls for assistance of a diversified nature and are expected to resolve a wide variety of community problems, as they occur.
>
> a.      To accomplish these purposes, the professional responsibilities of the fire department, within their area of jurisdiction, include the following functions:
>
> .    .    .

---

[8] Ms. Schofield's "good cause" argument is mainly directed at the investigation conducted before the May 27 letter of termination.  We consider "good cause" only as it pertains to the Commission's determination that the employee's termination promotes the efficiency of the service.

(6)     The performance of such other related services as required by the community.

(7)     The advancement of a cooperative relationship with the general public.

. . . **Section 21.7 <u>Required Conduct</u>.**  In addition to the specific duties of each individual rank and assignment, the following provisions are applicable to all firefighters and employees of the department insofar as they are pertinent to their particular functions and responsibilities:

a.     Regarding furnishing assistance, firefighters shall furnish fire assistance to all persons making such request, consistent with their fire management duties and assignments.

.     .     .

f.     Regarding courtesy, all firefighters shall be courteous and considerate to the public, to their superior fire fighters and to their fellow firefighters of the department.  All firefighters shall at all times refrain from sarcasm and making derogatory remarks concerning each other. . . . They shall be tactful in the performance of their duties and are expected to exercise the utmost patience and discretion even under the most trying circumstances.

.     .     .

s.     Regarding personal relationships, all firefighters shall be considerate and polite at all times to all department personnel.

[¶46]  The Commission stated that Ms. Schofield's conduct on May 19, 2020:

was discourteous and tactless; contrary to the expectation of exercising the utmost patience and discretion; demonstrated a substantial bias and anger against a citizen; was inconsistent with the duty of advancing cooperative relationships with the public; and constituted belligerent and threatening behavior,

regardless of her intent. Her leadership position as a shift captain adds weight to the significance of her infractions.

[¶47] The Commission concluded her conduct was detrimental to the efficiency of the department because:

- Karigan Gates had never had a Rawlins Fire Department employee respond to a call as Respondent did on May 19, 2020;

- Ms. Schofield's anger influenced how she provided assistance to DM;

- Ms. Schofield admitted she admonished DM while providing service, and her tone during the visit was angry and irritated as described by Fire Engineer Hardy who accompanied her on the call;

- Ms. Schofield's actions at DM's house influenced how DM accesses Rawlins Fire Department services as evidenced by her request "not to send the mean lady from the Fire Department";

- Ms. Schofield's disciplinary history since her promotion to shift captain demonstrates she was reprimanded and suspended for being under the influence and lying to her chief, she was reprimanded for insubordination and sarcastically accusing a peer;

- Her transgressions are especially relevant to one holding a leadership position in the Rawlins Fire Department.

[¶48] Based on these findings and conclusions, the Commission determined cause for termination was sufficient, established, and Ms. Schofield's termination would promote the efficiency of the service.

[¶49] The Commission recognized and discussed in detail Ms. Schofield's many accomplishments while employed with the Rawlins Fire Department. It specifically noted that she was the only firefighter certified to run the youth firestarter prevention program and that, in her absence, the program was no longer active. The Commission acknowledged that Ms. Schofield was the only certified Arson K-9 Handler in the State of Wyoming. It observed that, "These attributes, as well as the general lack of experience of the Rawlins Fire Department staff at this time, weigh against a finding that [Ms. Schofield's] discharge will promote the efficiency of the service."

[¶50] Even so, the Commission determined "her entire record is ultimately outweighed by her May 19, 2020 misconduct and her prior disciplinary actions." Ms. Schofield, in

essence, asks us to reweigh the Commission's decision. This, we cannot do. *Mirich*, ¶ 16, 481 P.3d at 633 ("If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal." (quoting *Exaro*, ¶ 10, 455 P.3d at 1248)). The Commission weighed the evidence and concluded Ms. Schofield, a firefighter in a leadership position, had *expressed* an intent to physically harm a citizen and in her anger, her treatment of the citizen affected the public's perception of the Rawlins Fire Department. This conclusion does not rely solely on the testimony of witnesses at the hearing. The Commission heard, firsthand, the recorded conversations, the tone of the speakers' voices, and the call from DM asking dispatch not to send the "mean lady." The evidence was sufficient to support the Commission's conclusion that the termination of Ms. Schofield's employment promoted the efficiency of the service.

## B.    Arbitrary and Capricious

[¶51]   Ms. Schofield argues the Commission's decision is arbitrary and capricious because it did not consider her claims of pretext in its findings, and the hearing officer wrongfully excluded her evidence of male co-workers engaging in similar conduct for which she was terminated without discipline. She asserts pretext was shown by Mr. Ziebold's May 27, 2020 letter because there was no verbal threat to DM; the rationale for termination substantially shifted from the May 27 letter to the June 8, 2020 notice; and the "decisionmakers" (Mr. Ziebold and Battalion Chief Robinson) gave inconsistent testimony at the contested case hearing.

[¶52]   In *Dunn v. GOJO Indus.*, the Ohio Supreme Court stated:

> To demonstrate pretext, "the plaintiff must show one of the following: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the adverse employment action, or (3) that the employer's reasons were insufficient to motivate the adverse employment action." Under the first method, the plaintiff provides evidence that the alleged reason for her discharge is "factually false." Under the second method, the plaintiff "admit[s] the factual basis underlying the employer's proffered explanation and further admit[s] that such conduct could motivate dismissal[, but] attempts to indict the credibility of h[er] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." Under the third method, the plaintiff presents evidence "that similarly situated employees were treated differently."

21

*Dunn v. GOJO Indus.*, 2017-Ohio-7230, ¶ 15, 96 N.E.3d 870, 875–76 (Ohio) (citations omitted).

[¶53]  We apply these guidelines to the facts of this case in determining whether pretext was demonstrated.  Under the first criterion, Ms. Schofield argues that the City's proffered reason for termination had no basis in fact because she never intended to engage in violent conduct.  As discussed above, her expression of an intent to do violence was recorded and there is a substantial factual basis for the Commission's conclusion that she threatened violence.  Moving to the second criterion, Ms. Schofield admits her conduct violated the Commission rules and agreed that she should be disciplined but maintains another employee would have received a lesser punishment.  Ms. Schofield introduced evidence that Battalion Chief Robinson "does not like her," and she believes this was, at least in part, because of her gender.  This evidence is insufficient to establish the Commission, the actual decision maker, was somehow influenced by Battalion Chief Robinson's alleged bias or Mr. Ziebold's reliance on Battalion Chief Robinson's recommendation that she be discharged.

[¶54]  The third criterion brings us to Ms. Schofield's claim that the hearing officer's exclusion of her evidence was arbitrary and capricious.

> An agency has discretion to rule on the admissibility of evidence and we will not disrupt its evidentiary rulings unless it abused its discretion.  An abuse of discretion occurs "when the decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it."

*Union Tel. Co.*, ¶ 62, 508 P.3d at 1096–97 (citations omitted).

[¶55]  The hearing officer permitted Ms. Schofield to introduce evidence of sex-based stereotypes or opinions held by supervisors.  She was allowed to elicit testimony from Chief Rutherford that he believed Battalion Chief Robinson unfairly made allegations that Ms. Schofield had falsified department documents.  She also presented testimony from a Fire Department employee that Battalion Chief Robinson had an "in-general condescending attitude toward [her]."

[¶56]  In addition, while the hearing officer rejected the wholesale admission of "circumstances during the last several years where Rawlins Fire Department employees acted unprofessionally and used profane language in public," the hearing officer ruled:

> [W]hether other firefighters have acted unprofessionally and used profane language in public is not relevant unless the situations are very similar to the conduct which led the Interim

22

> City Manager to make the discharge decision. *Green v. New Mexico*, 420 F.3d 1189, 1194–95 (10th Cir. 2005).

Ms. Schofield made no further effort to show how other incidents were sufficiently similar to her conduct and does not argue that this ruling is erroneous. Ms. Schofield cannot base her pretext argument on properly excluded evidence.

[¶57] In sum, we find Ms. Schofield has not shown the Commission's conclusions were unsupported by substantial evidence, arbitrary and capricious, or otherwise not in accordance with the law.

## *CONCLUSION*

[¶58] The City's rescission of its original termination letter and reinstatement of Ms. Schofield with back pay rendered the initial due process violations moot. The City's June 8, 2020 notice of request for termination provided Ms. Schofield notice of the reasons it relied on in requesting her termination. The contested case hearing provided Ms. Schofield a full and fair opportunity to respond to the reasons underlying the request that her employment be terminated. The Commission's Findings of Fact, Conclusions of Law and Order was supported by substantial evidence and was not arbitrary and capricious, or otherwise not in accordance with law. We reverse the decision of the district court and affirm the Commission's order.